GREEN ET AL. v. SHANKLIN ET AL.

[No. 3,139.    Filed May 11, 1900.]

MUNICIPAL CORPORATIONS.—*Sewer Assessments.—Collateral Attack.* —In an action to foreclose an assessment lien for the construction of a sewer, a property owner cannot raise the question that the work was not performed according to the terms of the contract, where the work was accepted and the assessments made and approved by the common council.   *pp. 608-614.*

SAME.—*Sewer Assessments.—Fraud.*—Where a contractor, in the construction of a sewer, for which he is to receive his compensation from the owners of real estate through the approval of the common council, exercises an influence upon the common council adapted in its character to affect unduly in his favor the determination of the council, such influence being thus exerted by the contractor for the purpose of so affecting the decision, and having the effect of influencing the council to make an assessment which, if.enforced, will be injurious to the property owners affected, there is such a harmful violation of duty as amounts to fraud, for which the courts will interpose.   *pp. 614-616.*

From the Wells Circuit Court.   *Reversed.*

*J. S. Dailey, A. Simmons* and *F. C. Dailey,* for appellants.

*G. A. Mason* and *J. C. Farber,* for appellees.

BLACK, J.—The city of Bluffton constructed a system of sanitary sewers under the provisions of §4288 *et seq.* Burns 1894, and §3597a *et seq.* Burns Supp.   This was a suit brought by the assignee of the contractors, under §4294 Burns 1894, to foreclose assessments made on account of said system of sewers upon two lots in said city owned by

Green v. Shanklin.

Peter S. Green, who did not execute any stipulation waiving objections to illegality or irregularity as to said assessments in consideration of the right to pay them in instalments, and said Green and his wife have appealed from the judgment of foreclosure rendered against them. No objection to the complaint is made here, and we will treat it as sufficiently showing compliance with the requirements of the statute, no question as to the constitutionality of which is suggested.

The amended answer of the appellants consisted of five paragraphs, each of which was held insufficient on demurrer. The answers are quite lengthy. In the first paragraph facts were stated showing that the work in many particulars was not done according to contract, and that on account of the carelessness and negligence of the contractors in the construction of the sewer, and their failure to construct it according to contract, as alleged, the offal and refuse matter passing into the sewer would escape, and cause an unhealthy condition to exist all over said city "at all times since the construction of said sewer"; that the sewer, as constructed, is of no value to the appellant, or to said city, or to the public generally, and is absolutely worthless, and of no value for any purpose, and is unhealthy and unsanitary to all the inhabitants of the city; that the common council and the contractors, each and all, well knew of the worthless condition of the sewer, and its unhealthy condition, and of its damaging effects upon the public generally, as aforesaid, before and at the time it was accepted, and with such knowledge, and in utter disregard of the rights of the appellants and of the public generally, the common council accepted the sewer, over the protest and against the will of the appellants.

In the second paragraph it was alleged that the sewer is worthless, and of no value whatever; that it does not and will not in any way benefit any property, real or personal,

in said city, and does not and will not in any way benefit any of the real estate mentioned in the complaint; that it is of no benefit to the public, for the reason that the contractors negligently constructed it by leaving the joints thereof disconnected and dislocated; that it is not watertight, and the offal and refuse passing into it escape therefrom, and cause an unhealthy and unsanitary condition to exist all over said city at all times since the construction of the sewer; that on account of such negligence, the offal and refuse passing into the sewer are obstructed, and the sewer ·is wholly insufficient to answer the purpose for which it was constructed, and is insufficient to carry off such offal and refuse, and is of no value for any purpose, and is worthless; that on account of such negligence of the contractors the sewer produces and will produce an unhealthy condition all over and through said city, and the sewer is unsanitary to each and all the inhabitants of the city, and is and will be injurious, dangerous, and inimical to the health of the inhabitants of the city; that the common council and the contractors knew of the worthless condition of the sewer, and of its unhealthy condition, and·of its damaging effect upon the public, as alleged, and with full knowledge of said facts, and in disregard of the rights of the appellants and of the public, the common council accepted the sewer, over the protest and against the will of the appellants. As to the third paragraph, the appellants remark correctly in their brief that it is like the second, except that it does not allege negligence on the part of the contractors.

In the fourth paragraph, after averments like those of the first, the appellants allege, in substance, that the contractors, with the fraudulent intent of injuring the inhabitants of the city who were to be assessed to pay for the construction of the sewer, and especially the appellants, and with the fraudulent intent of gaining an undue influence over the council of the city, and thereby causing and inducing the common council to accept the work without its being completed ac-

cording to the contract, employed certain members of the common council, to wit, one William B. Little and other members of the council whose names were to the appellants unknown, to superintend the construction of the sewer, and paid said members high wages during all the time said sewer was being constructed; that at the time the sewer was accepted said members who had accepted said wages from the contractors were members of the common council, and the contractors and the common council well knew that the sewer was not completed according to contract, that it was worthless, and of no value whatever for a sanitary sewer, as before in this paragraph alleged, and well knew that the sewer was of no value whatever for any purpose; that the contractors did so gain an undue influence over the common council, and did fraudulently procure the acceptance of the sewer on the part of the common council, as above averred, by reason of the undue influence over said members arising out of said employment and the wages so paid them for their work in superintending the construction of the sewer, which was so accepted through the fraud and collusion of the contractors and the common council as alleged. The fifth paragraph was like the fourth, with some additional allegations of faulty construction of the sewer.

The first, second, and third paragraphs of the amended answer related to matters which were within the discretion of the common council, in the decision of which it acted judicially, having jurisdiction of the subject-matter, and having acquired jurisdiction as against the property of the appellants by giving the notices required by statute. The appellants were afforded an opportunity to appear before the common council and its committee to present objections to the report of the city civil engineer, and to have a hearing thereon. It is not clearly shown by any of the answers whether or not the appellants did so appear and obtain a hearing, it being merely alleged that the common council accepted the sewer over the protest and against the will of

the appellants.. Whether they did or did not avail themselves of the opportunity to be heard can not affect the question here presented, for in either case they can not be heard in this collateral attack on the assessments upon any matter contained in the first three paragraphs of their amended answer.

In Cooley on Taxation, 662, it is said: "When the estimate of benefits is referred to assessors, by whatever name they may be called, the rule of conclusiveness here stated must apply to their action. The remedy of one who considers himself unfairly assessed is to apply for redress to the statutory tribunal, if one is provided with the power to review. In all collateral proceedings, the benefits assessed are conclusively presumed to be received, and the assessment is not open to revisal or review." And on page 671 of the same work, it is said: "It is in general no defense to an assessment that the contract for the work has not been performed according to its terms. If the proper authorities have passed upon the question and accepted the work as satisfactory, the acceptance must be conclusive; there can not and ought not to be an appeal from them to court or jury."

In *City of Ft. Wayne* v. *Cody*, 43 Ind. 197, under a statute giving the common council of the city power to construct sewers and to provide for the payment of the cost of the construction, to cause the same to be done by contracts given the best bidder after advertising for proposals, to provide for the estimate of the cost thereof and the assessment of the same upon the owners of such lots and lands as might be benefited thereby in such equitable proportion as the common council might deem just, the estimate to be a lien upon such lots and lands, and to be enforced by the sale thereof in such manner as the common council might provide, it was held, the action being for an injunction against the execution and collection of a precept, that, the question of benefit having been once passed upon by the.

Green *v.* Shanklin.

common council, no other tribunal or court had any power to review or pass upon it; that the legislature had granted the sole power to try and decide that question to the common council, which acted judicially; and when it had determined by its estimate and assessment what property was benefited, and in what proportion, that finding and decision was final, and there was no power in any judicial tribunal to interfere unless for fraud and corruption in making the assessment. See *Loesnitz* v. *Seelinger*, 127 Ind. 422, 433.

It is said in *Barber, etc., Co.* v. *Edgerton*, 125 Ind. 455, 465, that whether such an improvement does or does not benefit the property in a sum equal to its cost is essentially a judicial question upon which the property owner is entitled to notice and a hearing, and that under §§4293, 4294 Burns 1894, the property owners were awarded a hearing before any final assessment was made, and were afforded a remedy which the legislature deemed sufficient.

*Darnell* v. *Keller*, 18 Ind. App. 103, was a suit to foreclose an assessment for the construction of a sidewalk in the city of Indianapolis. An answer proceeded upon the theory that the work was not done according to the contract. The court determined that the board of public works was, by the statute, made the sole judges of the question whether the work had been done according to the terms and provisions of the contract or not, and it was said that "where the statute gives no appeal, or no right to contest the question of the proper performance of the work, the great weight of authority is that the acceptance is conclusive upon the property owner, unless such acceptance was fraudulent."

Again in *Bozarth* v. *McGillicuddy*, 19 Ind. App. 26, which was a proceeding to foreclose a lien for street improvements in the city of Valparaiso, under §4294 Burns 1894, the principles involved therein being applicable to the case at bar, it was held, in effect, that where the work under such a contract has been accepted by those authorized to pass upon it, no defense but that of fraud can be interposed by the

property owner in a suit to enforce the lien of the assessment. See, also, *Larned* v. *Maloney*, 19 Ind. App. 199; *Cason* v. *City of Lebanon*, 153 Ind. 567.

Under the authorities, we can not hold that there was error in sustaining the demurrer to the first, second, and third paragraphs of answer.

The common council, in performing the duty of making the assessment, as already remarked, exercise a discretion which the courts have characterized as judicial, and for this reason their decision can not be collaterally attacked where it appears that the requisites of jurisdiction existed. Yet the actions of the common council of a city in such a matter are not in all respects like those of a court, and this difference is recognized by the courts in denominating such function of the common council as *quasi* judicial. The common council, in making such an assessment, does not act solely upon evidence such as that to which courts are regularly confined. In the case of a local sewer the common council acts, after notice by publication, upon the report of the city engineer, and upon the recommendation of a committee of the common council which has heard the report of the engineer, and upon matters brought to their notice on the hearing upon objections, if any, of those who feel aggrieved by the report, which report and the assessments therein the council may adopt, alter, or amend; and the common council assesses against the several lots or parcels of ground the several amounts which are assessed for and on account of the local sewer or the equivalent thereof. §§4293, 4294 Burns 1894, §3597c Burns Supp. In the case of the construction of a sewer adapted to more than local use, such as that here in litigation, it further resorts (for the excess of cost above what would be equivalent to the cost of a local sewer) to the method.provided by statute for the assessment of benefits in laying out streets, the common council performing the duty of making the assessments, which, in the case of the opening of streets, is imposed upon city commissioners. §3629 *et seq.* Burns

1894, §§3597a-3597c Burns Supp.; *Alley* v. *City of Leba-non*, 146 Ind. 125.

In the performance of the functions pertaining to the construction of a sewer and the making of assessments there-for, the common council acts in an administrative capacity, with large discretionary powers. So far as it has kept within its prescribed powers, and has acquired jurisdiction in the prescribed manner, the exercise of such official discretion must be treated as a *quasi* judicial determination of the rights and obligations involved. Many analogous *quasi* judicial determinations of administrative officers might be instanced, and will occur to the mind of every lawyer. But whatever may be true concerning the decisions of courts proper, the authorities leave no doubt that the common council must exercise such discretion honestly and without subjection to corrupting influences. The business which it thus administers is public business, and must be done in the interest of the public without the imposition of burdens upon the citizens by way of assessments for inferior and de-fective street improvements or sewers, through fear or favor arising from undue influence exerted or procured by contractors. We can not conclude that the fraud which will furnish ground for equitable defense to such an assess-ment does not include successful undue influence of the contractor upon the common council.

In *Motz* v. *City of Detroit*, 18 Mich. 495, it was said that, so long as the common council kept within the limits of its jurisdiction as defined by the constitution and statutes of the state, and its members were guilty of no intentional wrong or corrupt conduct in the discharge of their official duties, the courts had no power to control the exercise of their legal discretion, or to overrule and set aside their judgment, but must accept their conclusions as warranted by the facts and as binding alike upon the city and upon all its inhabitants.

We need scarcely say that courts habitually abstain from definitions of fraud; but it may safely be said that where a

contractor constructing a public sewer, for which he is to receive his compensation from the owners of real estate through the official approval of the result by the common council, so far violates his duty toward such owners as to exercise upon the common council an influence adapted in its character to affect unduly in his favor the determination of the council, such influence being thus exerted by the contractor for the purpose of so affecting the decision, and in fact having the intended effect of influencing the council to the making of an assessment which, if enforced, will be actually injurious to such persons through the compulsory payment thereby of the proper price of a sewer constructed according to contract for a sewer which, by reason of failure to comply with the contract, is not beneficial to such owners, and is worthless and injurious, there is such harmful violation of duty as amounts to the fraud for which the courts will interpose, when properly invoked, for the purpose of preventing its success. We do not hold the employment of the members of the common council by the contractor for the superintendence of the work as necessarily and of itself a fraud, as a matter of law. There must be fraud in fact. We can not say that such employment was not adapted to unduly influence, and it is expressly averred that the contractor employed the councilmen, and paid them high wages, for the purpose of procuring such influence, and that it did have the effect so intended. It was not necessary to state the evidence by which such effect would be proved; it was sufficient to state the ultimate, issuable fact.

Whatever criticisms might properly be made upon the structure of the third and fourth paragraphs of answer, we regard each of them as containing the essentials of a good defense. It will be for the court upon the trial to determine upon the evidence whether or not, in fact, the alleged effect was produced which it is averred was fraudulently purposed and accomplished. The judgment is reversed, with instruction to overrule the demurrer to the fourth and fifth paragraphs of answer.