AMANDA E. WETHERELL, APPELLEE, V. FRANK G. ADAMS
ET AL., APPELLANTS.[*]

FILED JANUARY 23, 1908. No. 15,016.

1. Appeal: CONFLICTING EVIDENCE: FINDINGS. Where the evidence in the district court consists of oral testimony which is in sharp and irreconcilable conflict, and the conclusion derivable therefrom is dependent in part upon inferences from circumstances, some of which are in dispute, and in part upon the weight and credibility of testimony to be determined from the degree of competency of the witnesses, their opportunity for knowledge and the apparent clearness of their recollection, and the reasons therefor, the findings of the trial judge will be considered in determining the issues in this court. *Cooley v. Rafter*, ante, p. 181, followed and approved.

2. Evidence examined, and *held* sufficient to support the findings of the trial court.

APPEAL from the district court for Merrick county: CONRAD HOLLENBECK, JUDGE. *Affirmed.*

*Martin & Ayres* and *John J. Sullivan*, for appellants.

*Patterson & Patterson, contra.*

GOOD, C.

Plaintiff brought this action in the district court to cancel and set aside a deed of conveyance to 80 acres of land

[*] Rehearing denied. See opinion, p. 589, *post.*

in Merrick county, and to quiet the title to the premises in her. The defendants, who are husband and wife, answered, alleging title in the husband and asking that his title be quieted. Upon a trial of the issues the district court found in favor of the plaintiff, and entered a decree in conformity with the prayer of her petition, and awarded to the defendants a lien upon the premises for $42 for permanent improvements made by the defendants. From that decree the defendants have appealed to this court.

The appellants, Frank Adams and wife, are the son and daughter-in-law of the appellee. The following is a substantial statement of the facts out of which this controversy arose: Amanda E. Wetherell and her husband separated. Each was the owner of real estate, and upon their separation they entered into a contract whereby each released, or attempted to release, to the other any rights that the respective parties may have been entitled to in the lands of the other by reason of their marital relation. Amanda E. Wetherell owned the 80 acres in controversy, and leased the same unto the appellants, and resided with them. Mrs. Wetherell had two other children, daughters, both of whom were married. It appears that Mrs. Wetherell had promised that the 80 acres in controversy should be given to her son at her death. The rental for the 80 acres was $110 a year, and from her scanty income she was unable to make such repairs and improvements upon her premises as she desired to have thereon. They discussed the question of making these improvements and repairs, and he was willing to make them, provided he was assured that the premises would be given to him at his mother's death. They decided to go to Central City and arrange for drawing such papers as would vest the title to the land in Mr. Adams at her death. On the 20th day of January, 1905, they went to the office of Patterson & Patterson, attorneys at law, in Central City, where Mrs. Wetherell had them prepare a will, which she executed, wherein the premises were devised to Adams. After this was done, it seems that he was still not satisfied, and had

some fears that the contract entered into between Mrs. Wetherell and her husband would not be sufficient to cut off any rights her husband might have in the land, in the event that he should survive her. Thereupon a deed was drawn, signed and acknowledged by Mrs. Wetherell, conveying the premises to Adams, and at the instance of Patterson & Patterson a life lease of the premises from Adams to Mrs. Wetherell was prepared and signed by him. It seems to have been understood and agreed at the office of Patterson & Patterson that the deed and lease were not to be delivered. The will, the deed and the lease were placed in one envelope and given to Mrs. Wetherell. The question arose as to where the papers should be kept. Some one suggested that they should be left in the custody of Patterson & Patterson, but Mrs. Wetherell said that she had a safety deposit box in a bank at Clarks, where she would place them. Thereupon Mrs. Wetherell handed the envelope, containing all the papers, to Adams, asking him to put them in his pocket to carry them home for her, and that on their way home they would stop at Clarks and leave them at the bank. Up to this point there is practically no controversy as to the facts. The appellants claim that after reaching home, and after they had eaten their supper, the papers were read over and examined by them in the presence of Mrs. Wetherell, and that further conversation ensued with reference to the making of the repairs and improvements, and that Adams then claimed that he was unwilling to go ahead and make the repairs unless the deed was delivered to him, and that, thereupon, Mrs. Wetherell consented to his taking the deed. The appellants claim that Mrs. Wetherell requested that the deed should not be recorded, because it might lead to unpleasantness with her married daughters. Mrs. Wetherell denies entirely this conversation, and claims that she never delivered the deed, nor authorized the delivery, and that she entrusted the papers to Adams to place in her box in the bank at Clarks. In the month of June following Mrs. Wetherell assigned to Adams a fire insurance policy

covering a part of the buildings upon the premises. At this point it should be remarked that Mrs. Wetherell was practically blind and unable to read, and she claims that she did not know that she was assigning her policy of insurance to her son, but believed that it was a new insurance policy which was being taken out, and which, she was informed, it was necessary for her to sign. The appellants both claim that the assignment was read over to her and that she fully understood it. In December following this a disagreement arose between Mrs. Wetherell and her daughter-in-law, and Mrs. Wetherell left the home of her son and went to the home of one of her married daughters. Thereupon the son caused the deed to be recorded. Mrs. Wetherell's daughter saw in the newspaper the reported transfer of the real estate and informed her mother, who immediately instituted this action to cancel the deed and quiet the title.

It will be seen that this action hinges upon the question as to whether or not there was a delivery of the deed by Mrs. Wetherell to her son. There is a sharp and irreconcilable conflict in the testimony. It appears that Adams made certain improvements upon the premises in the way of a workshop, planting some trees and some tame grass seed, and papering and painting the interior of the house, and that he paid the taxes upon the land for the year 1905. All that he did in this respect would be consistent with the claim of Mrs. Wetherell that he was to make the improvements upon the understanding that he was to have the property at the death of his mother. There are certain circumstances that tend to corroborate Mrs. Wetherell's testimony. It would seem that Adams was entirely satisfied to make the improvements and repairs if he could be assured that the land would be his at his mother's death. To accomplish this purpose her will was executed. He seems then to have had some fears of the claims of Mr. Wetherell, and for that reason desired the deed. This deed was signed and acknowledged, but it was agreed between them that it should not be delivered until Mrs.

Wetherell's death.   While it is, perhaps, plain that this deed had no efficacy while undelivered, yet it was sufficient to satisfy Mr. Adams, and it is not apparent that anything came up, or any new information came to him, to cause him to change his mind.   It is somewhat singular, then, that if he was satisfied to make the repairs and improvements on the condition that he was to have the land at his mother's death, and believing that this was accomplished by the will and the deed, he should then refuse to make the repairs and improvements until the deed was delivered to him.   Again, the evidence indicates that Mr. Adams was a man of intelligence, and he appears to have been very cautious and prudent in his dealings with his mother.   It is somewhat singular that one so prudent and cautious should permit the insurance policy to stand for five months without being assigned.   And if, as he asserts, Mrs. Wetherell consented that the deed should be delivered, and that he should do with it as he pleased, it is somewhat remarkable that one so cautious and careful should not have had the deed recorded for eleven months after its delivery.   There was also evidence of the fact that Mr. Adams had had access upon one or more occasions to Mrs. Wetherell's private box in which she kept her papers in the bank at Clarks.   Under all these circumstances, we do not think it can be said that the evidence preponderates in favor of the appellants.   The burden of proof was upon the appellee.   The evidence was in direct conflict.   The witnesses were personally before the trial judge, who had an opportunity to judge of their fairness and candor; and these facts were, doubtless, considered by the trial court in finding the issues in favor of the appellee.

While the parties to this suit are entitled to a trial *de novo* in this court, yet this court has held, in *Cooley v. Rafter, ante,* p. 181: "The rules laid down by this court for its guidance in such cases in *Faulkner v. Simms,* 68 Neb. 299, as well as in subsequent cases decided under the present statute, are sound and indispensable to the due

administration of justice.  The trial judge, who knows the parties and who personally presided over the examination of the witnesses and observed their demeanor, is far more competent, in most cases, to weigh their testimony and deduce correct conclusions therefrom than can this court be, having before it nothing more than an unresponsive written record.  The findings of the trial court in such cases will be considered in determining the issues in this court.  The whole evidence, however, will be examined, and the issues determined anew."  We are in entire accord with this statement of the law, and think that it is peculiarly applicable to the case at bar, and that under this holding we cannot conscientiously say that there was any error in the findings of the trial court.

The judgment of the trial court is amply supported by the evidence, and we therefore recommend that it be affirmed.

DUFFIE and EPPERSON, CC., concur.

By the Court: For the reasons given in the foregoing opinion, the judgment of the district court is

AFFIRMED.

The following opinion on motion for rehearing was filed June 4, 1908.  *Rehearing denied:*

Judgment: CONCLUSIVENESS.  Where the validity of a certain deed was the sole issue tried in an action *quia timet*, a decree of the court "that the title to said premises be forever quieted in said plaintiff" will not bar defendants from asserting rights to possession or title acquired by virtue of other contracts.

EPPERSON, C.

A statement of the facts may be found in the opinion, *ante,* p. 584.  Plaintiff's action is founded entirely upon the alleged surreptitious possession by defendants of the deed in controversy.  In their answer defendants pleaded the delivery of the deed to them.  The evidence, however, discloses that at the time of the execution of the deed the

defendants were in possession of the land under a lease which expires March 1, 1909. This lease apparently was superseded by a contract of the parties contemporaneous with the execution of the deed. Plaintiff agreed to devise the land in controversy to her son, the defendant Frank G. Adams, and during plaintiff's lifetime defendants were to have possession, use and control of the land, for which they were to pay plaintiff $110 annually during her lifetime, and in addition thereto agreed to make certain improvements upon the land. The court decreed "that the title to the said premises be forever quieted in said plaintiff."

It is now contended upon a motion for a rehearing that the decree of the court which we affirmed will bar the defendants from asserting whatever right or title they may have under the contract above referred to. We considered that defendants' right to the land derived from the possession of the deed only was pleaded, tried or determined, and the decree of the court only quiets and confirms the plaintiff's title as against the deed, which it is adjudged was never delivered. The judgment must not be taken as a bar to whatever rights the defendants have or may have hereafter under the contract of the plaintiff to devise the land to her son, nor under the contract for possession during her lifetime.

With this construction placed upon the decree of the court it is apparent that a rehearing is unnecessary, and we recommend that the defendants' motion be denied.

By the Court: For the reason given in the foregoing opinion, defendants' motion for rehearing is

OVERRULED.