GEORGE W. HADLOCK ET AL., APPELLANTS, V. FREEMAN S. TUCKER, MAYOR, ET AL., APPELLEES.

FILED APRIL 17, 1913.   No. 16,813.

1. **Municipal Corporations:** ORDINANCES: PUBLICATION. Where a city charter requires that ordinances and other proceedings shall be published in a newspaper published in such city, but there is no requirement that the paper in which the publication is made shall be printed therein, and there is no paper printed therein, the publication of such proceedings is sufficient if published in a paper printed elsewhere, so far as the mechanical work is concerned, but circulated in the city from an office maintained therein to local subscribers generally to the same extent as though printed there, and such publication will not be held invalid.

2. ———: STREET IMPROVEMENTS: CONTRACT. Where a bid for the paving of a street exceeded the engineer's estimate to the extent of a few dollars, the excess being limited to one item, and the bid as made was accepted by the city council, but upon entering into the contract the slight excess was discovered, and the excess eliminated, and the contract brought within the estimate, the contract was not thereby void.

3. ———: ———: Injunction. Where a city of more than 1,000 and less than 5,000 population, by its proper officers, entered into an agreement with a contractor to pave a street within the city, and the contractor proceeded with the work under his contract and under the direction of the city officers until the completion thereof, a taxpayer of the city, with full knowledge of the progress of the work, will not be heard to enjoin the payment therefor after the completion of the contract.

Appeal from the district court for Douglas county: Alexander C. Troup, Judge. *Affirmed.*

*Will H. Thompson,* for appellants.

*Robert H. Olmsted, Carl E. Herring* and *Frank L. Mc-Coy, contra.*

Reese, C. J.

This is an action to enjoin the officers of the city of Florence, in Douglas county, from paving, curbing, guttering or subdraining Main street in said city, to enjoin the issuance of any evidences of debt to pay for the same, and to enjoin the contractor from doing the work or receiving pay therefor.

It is alleged in the second amended and supplemental petition that plaintiffs are resident freeholders and taxpayers of the city of Florence, which is a municipal corporation having a population of more than 1,000 and less than 5,000; that defendant Tucker is the mayor of the city; that defendants Craig, Price and Allen are each councilmen or aldermen thereof; that the population of the city is about 1,500, and the assessed value of the taxable property therein was $341,591 at the last assessment, and did not exceed that sum; that on or about the 2d day of August, 1909, the city council pretended to pass, and the mayor approved, an ordinance ordering the paving, guttering and subdraining of Main street therein from the railroad tracks near the south side of Jackson street to the south line of Briggs street, and advertised and called for bids for the work, but did not call for bids

for 8,390 square yards of the surface, which was within and along the street railway tracks, and the city has let the contract for the work to defendant Ford, but excluding the said strip along and within the street railway tracks; that the said ordinance formed but one paving district, which included all the property within the city, and the improvement district comprises the whole of the city; that the city is the owner of property fronting and abutting on said Main street and within the district, as well as the owner of certain other property within the city, but that it has provided no fund with which to pay the tax for the improvement, and that there is no money in any fund of the city which can be appropriated to pay the same; that the total appropriation for the fiscal year, from May, 1909, to May, 1910, was the sum of $8,000, apportioned as follows: For street and alley fund, $2,700; for water fund, $1,800; for lighting purposes, $1,250; for officers' salaries, $1,350; for park fund, $200; and for miscellaneous purposes, $700; that the city has drawn warrants against said fund to the extent and amount of $11,000; that on the day on which the contract was let there had been contracted debts against the city and against the street and alley fund, and for miscellaneous purposes, a sum in excess of $3,400, which had been appropriated, and debts contracted against the city, including the lighting fund, the water fund and salary fund, more than $5,500, and there are outstanding valid warrants for the current and previous years more than the sum of $18,000, but for the payment of which no appropriation had been made, and said warrants were drawing interest at the rate of 7 per cent. per annum, and for the payment of which no provision had been made, or funds provided; that the whole of said city is within the school district, of which it forms a part, and the school district has voted the limit of taxes that can be raised, and is unable to levy any tax on its property within the city to pay for the improvement of Main street, and that all the taxes levied by the school district will be needed for the purpose of

maintaining the schools therein; that the mayor and council had no authority to impose a tax for paving the street upon any property not abutting on or adjacent to the street to be improved, and are without authority to order Main street to be paved, or for the creation of an improvement district for the purpose of paying the cost of such improvement; that the ordinance requiring the improvement to be made was first introduced and read on the 2d day of August, 1909, and passed to a final vote on the same day, and was not read on three different days, nor was the rule so requiring suspended; that it is an ordinance of general nature; that it has not been passed, nor published in a newspaper printed or published within the city, but was printed and published in a paper published elsewhere, and that no other or further publication of said ordinance was made, but at the time of the publication of the ordinance there was printed and published in the city a newspaper, which had been published therein for more than one year; that no estimate of the cost of said improvement had been furnished by the city engineer of said city and approved by the council prior to the time of advertising and calling for bids, and no publication was made for bids as required by the ordinance; that the cost of paving, curbing, guttering and subdraining the intersections on said street will exceed the sum of $10,000; that no fund has been provided to pay the same, nor can be; that no vote of the people has been had on the question of paving the street, and no petitions therefor filed; that the ordinance was designed for the improvement of the street in accordance with the working plans prepared therefor, but that said plans were indefinite and uncertain, and did not form any basis upon which a contractor could bid with certainty, and upon which the city could award a contract; and for that, with other reasons, the whole proceeding was void. It is further alleged that after the institution of this suit the mayor and city council let the contract to defendant Ford upon his bid for the making of said improvement, but excluding the portion above

36

referred to as being within and along the street car tracks, and said Ford is about to and, unless restrained, will proceed to do the work, which will be to the irreparable injury of the taxpayers of the city; that the bid of Ford was not the lowest bid for said improvement; that the bid exceeded the estimates of the city engineer; that the contract entered into with Ford did not conform to his bid, and was signed by the mayor for a price and cost differing from the price and cost named in the bid, no other or further bids being called for or received prior to said change; that the bids were never advertised as required by the terms of the ordinance, nor published in a legal newspaper printed in said city; that the city of Florence has no sewer system, and that one will soon have to be provided for, in which case the sewers will have to intersect and cross Main street in many places, and in some parts will have to be constructed along and in the street, and it would be unwise and unjust to tax the people for paving before the sewer is laid; that the ordinance above referred to is indefinite and uncertain, in that it provides no method or system of assessment by which the taxes may be levied; that the advertisement for bids, and under which bids were received and contract let, is indefinite and uncertain, in that no time limit for either the beginning or completion of the work is given, thereby depriving the city of receiving fair bids for the work of constructing the improvement; that the contract described is the only one entered into between the city and Ford; that since the commencement of this suit the contractor has proceeded with the work, and is grading and paving that part thereof between the tracks of the street railway company and for one foot on each side thereof with the intention of charging the same to the city, and, unless restrained, the mayor and council will pay for the same in violation of the express terms of the contract. The prayer of the petition is sufficiently shown by the former part of this opinion.

Separate amended answers were filed by Tucker, Craig, Price, Allen, and the city of Florence, on the one part, and

by Ford and Jackson in their own behalf. They are of great length, but will have to be briefly summarized herein. The former admits the official character of the answering defendants; that the city of Florence is a municipal corporation having more than 1,000 and less than 5,000 population, and "is governed by the provisions of chapter 37, Cobbey's Annotated Statutes for the year 1909;" that plaintiffs are resident freeholders of that city; that on or about the 2d day of August, 1909, the improvement of Main street in said city was ordered by ordinance duly passed; that the improvement district thereby created included all the real estate within the city; that pursuant to the ordinance the city advertised for bids for doing the work; that bids were received, opened and considered; that the contract was awarded to Ford for doing the work; that he soon thereafter began and has now completed the same; that the school district comprises all the property in its district, and is the owner of the land where its schoolhouse stands, and the city is the owner of real estate within its limits. All unadmitted averments are denied. It is alleged that ample provision has been made for connection with any sewer system that might thereafter be installed in the city, without interference with the pavement on Main street; that the ordinance requiring the improvement was legally passed; that the same and the bids were legally advertised; that the city engineer's estimate of the cost of the improvement was on file with the city clerk before the bids were advertised for; that the contract for the work was regularly awarded and executed; that the pavement of the street was demanded by the people, and the improvement constituted a special benefit to all the real estate within the city. It is further alleged that, after the refusal of the court, in the first instance, to grant a restraining order prohibiting the council from opening the bids and letting the contract, the bids were opened and the contract awarded to Ford, who was the lowest responsible bidder, and soon thereafter, on September 28, 1909, plaintiffs filed their amended and

supplemental petition, setting up said facts, alleging the invalidity of the contract, and again asking for an injunction, but that they did not call the matter to the attention of the court, nor seek any action thereon until the month of January, 1910, although during the interim the contractor had been at work, torn up Main street, the principal thoroughfare of the city, and rendered it impassable for its entire length, about one mile, and the width of said improvement, had laid the concrete on the east half of the street for the entire distance, and for from one-fourth to one-third of the distance on the west side thereof, the material for both the concrete and brick work, sufficient to complete the entire improvement, delivered on the ground at an expense of nearly $40,000; that during all that time plaintiffs were present in Florence, knew of the progress of the work, and are now thereby estopped to deny or question the invalidity of the contract or the proceedings in the performance thereof. It is further alleged, in substance, that the Omaha & Council Bluffs Street Railway Company had a single track along said street, which between its rails and for one foot on each side thereof measured seven feet; that there was no provision of law whereby the city could require or compel the paving of a greater width, nor to construct a double track in and along said street and pay for the paving thereon; that the said company refused to lay a double track, unless the city waive the provision of the statute whereby the company could be required to pave between its rails; and, to induce the construction of the double track, which could not be enforced by the city, the city, for the betterment of the public service on said street, and the advantage of the city generally, yielded its right to have the paving paid by the street railway company, and adopted a resolution by which it waived the "statutory requirement in so far only as it provides for the street railway company to pave between its tracks and one foot beyond the outer rails;" that, in pursuance of said resolution, the street railway company removed the old single

track rails and constructed a new and heavy rail double track, and, at its own expense of about $35,000, paved the entire space between the rails with vitrified brick paving blocks, and that the whole improvement had been completed; that the defendant city has paid for the engineering and inspection services on said work in excess of any assessment that will be made on the city property, and no appropriation is necessary for that purpose.

A joint answer was filed by Ford and Jackson, containing admissions similar to those contained in the answer of the city officers, and alleging that the city purposes paying for the pavement outside the outer rails of said tracks and between the double track, and the contractor charge the expense thereof to the city; that the contractor is proceeding with the work; that the proceedings from the inception thereof, to and including the advertisement for bids, the bid of Ford, and the letting of the contract to him, were regular and in accordance with law and the ordinance of the city; that the city and school district own property in the city as alleged. It is alleged that the contract has been fully completed and performed by Ford, and the same has been duly accepted by the city. Other averments of the petition are denied. It is further alleged that prior to August 9, 1909, plaintiffs had knowledge that the city contemplated the improvements of Main street in the manner provided for, and of the passage of the ordinance of August 2 of that year; that bids were to be called for and opened by the council in open session; that action on the bids were deferred for investigation; that on the 20th of August, 1909, plaintiffs instituted this suit, alleging the invalidity of the proceedings and proposed contract, and seeking an injunction against the same; that a restraining order was issued, but which, upon a full hearing, was subsequently set aside, and an injunction was refused; that the bid of Ford was subsequently accepted, the contract awarded and entered into, by which defendant was required to begin the performance thereof within ten days after the signing and delivery

thereof, and to complete the work on or before December 31, 1909, of all of which plaintiffs had knowledge; that Main street is and was the principal thoroughfare and only business street in the city, and on the line of road leading from Washington county and the north part of Douglas county into the city of Omaha; that the contract required the tearing up of the street and laying the pavement thereon for the distance of one mile and the full width of the street, and necessitated the removal of a large plant and equipment to the place of work, the making of contracts of purchase of paving brick at Galesburg, Illinois, and Buffalo, Kansas, and other supplies, at great cost and expense, which defendant proceeded to do, to and in which plaintiffs acquiesced, and in no manner opposed the same, taking no action thereon until September 28, 1909, when they filed their amended and supplemental petition, in which they repeated the averments of their original petition, and, in addition thereto, alleged the invalidity of the contract, but did not bring the matter thereof to the attention of the court for action thereon, during all of which time the defendant was proceeding and had proceeded with his contract, as he was bound to do by the terms thereof, and in the meantime Main street was torn up, rendering it impassable, the concrete laid for the entire distance on the east half and for about one-fourth to one-third of the distance on the west half, the material for the concrete and brick work delivered on and along the street at an actual cost of nearly $40,000, when the inclement conditions of the weather prevented the further prosecution of the work until the next spring, when he prosecuted the same to full completion in the month of May, 1910; that plaintiffs took no action in the prosecution of their suit until January, 1910, when they filed another supplemental petition, the only purpose of which was to prevent the city from issuing its bonds. An estoppel is pleaded against plaintiffs by reason of their inaction in asserting objections to the improvement within proper time.

Plaintiffs replied to the answer of defendants by a general denial, and admission that the city council pretended to pass a resolution concerning the double tracking of the street railway line, denying that the street railway company refused to construct a double track along Main street, alleging that the mayor, city council and city attorney informed the taxpayers, before the letting of the contract, that the street railway would double track its line within the city and pave the street between the tracks and for one foot outside thereof, and that the street railway had passed resolutions to that effect; that the said street railway company did not comply with the resolution, and did not complete said double track until long after January, 1910, and that the work between the tracks and for one foot outside the outer rails thereof was not commenced or done until the month of March, 1910.

Upon a trial being had in the district court, a finding and decree were entered substantially as follows: A general finding in favor of plaintiffs and against the defendants upon the allegations touching the issue of bonds; that the plaintiffs are entitled to an injunction as prayed; a perpetual injunction against the city of Florence, its officers and agents, restraining them from issuing the bonds of the city in payment of the improvement referred to; that Jackson and Ford are restrained from receiving or accepting any bonds of the city therefor. Costs expended by plaintiffs in all matters relating to the proposed issue of the bonds are taxed to defendants. Upon the other issues involved, the finding and decree are in favor of defendants, and the suit is dismissed at plaintiffs' costs in so far as said issues are concerned. Plaintiffs appeal.

As the decree of the district court upon the question of the right of the city to issue its bonds for the purpose of providing funds with which to pay the contractor for paving the street was in favor of plaintiffs, and no cross-appeal having been taken by defendants, that part of the decree must be taken to be a final adjudication of the question, with which we have nothing to do, and no further

reference need be made to it. The decree as to the other issues is quite general, the finding and decree being specific in nothing, except the dismissal of the petition, and we have found it very difficult, owing to the condition of the record, to discuss and determine the exact contentions of the parties, notwithstanding the very able and exhaustive brief and argument presented by plaintiffs' counsel. There seems to be no doubt that the paving of the street has been fully completed by the contractor, and the work approved and accepted by the city officers. While it is true that the proceedings of the council in letting the contract were irregular, and, in some respects, probably censurable, yet we find nothing in the evidence showing that the contractor should be deprived of his compensation for doing the work, if there is any method by which provision may be legally made for his payment. It is true that this action was commenced soon after the letting of the contract, by which it was sought to restrain its execution, and a restraining order was issued, but was dissolved upon the preliminary hearing for a temporary injunction, and the injunction was refused. This did not have the effect of releasing the contractor from a compliance with his contract with the city. Amended and supplemental petitions were filed as the work progressed under the contract, but no injunctions were applied for by procuring action thereon by the courts, and the work was finally completed and accepted by the city officers. The street is now paved, and, with the exception of one contention hereinafter noticed, we are unable to detect any claim of a failure to comply with all the provisions of the contract so far as the construction work is concerned.

There is some objection to the manner in which the publication of the ordinance and other matters in which notice of the proceedings were made. The evidence tends to show that no paper was printed in the city of Florence at the time the publication was made; that there were papers issued and sent out from offices maintained in the city, but the mechanical work of printing was done in

Omaha, adjacent to the city, and sent in bulk to the office, which was maintained in Florence, and from that office distributed to the subscribers. The statute (Comp. St. 1909, ch. 14, art. I, sec. 59) does not require that the newspaper in which the ordinance is published shall be printed in the city, but that the publication shall be made "in some newspaper published in said city or village." The evidence shows a sufficient compliance with the statute.

It is next contended that the bid of Mr. Ford, to whom the contract was awarded, exceeded the city engineer's estimate. It appears that the items which exceed the engineer's estimate were of little importance, and when the contract was finally entered into those items were brought within the estimate, and the contract was not for an excessive amount. The slight error in the bid could not render the contract void.

Ordinance No. 254, passed by the mayor and council of defendant city of Florence on the 2d day of August, 1909, by which the grading and paving of Main street were ordered, provided for the payment of the cost of the improvement by the city, "except such portion thereof as must be paved by the Omaha & Council Bluffs Street Railway Company." By this language the cost of paving the street excepted that expense from that assumed by the city, and clearly indicated the purpose of requiring the street railway company to pay the expense of grading and paving along its tracks, then upon the streets, as provided and permitted by the charter of the city. The ordinance as published contained the same provisions. The published notice to contractors contained the recital that there would be 31,841 yards of paving to be constructed, "and that, in the event of the Omaha & Council Bluffs Street Railway Company laying double tracks on said part of said street, there will be 23,451 yards of paving, the cost of which will be taxed to the real estate within said district, and 8,390 yards of paving, the cost of which must be paid by the said railway company." The ordinance requiring the street to be paved was passed August

2, 1909. The engineer's estimate of the cost of the improvement was filed the 4th of the same month, in which it is estimated that there will be 31,841 square yards of pavement, and that, "in the event of the Omaha & Council Bluffs Street Railway Company laying double tracks on said part of said street, there will be 23,451 square yards of paving, the cost of which will be taxed to the real estate within said district, and 8,390 square yards of paving, the cost of which must be paid by the said street railway company." All the proposals and bids were based upon the ordinance, the estimate and the publication constituting the foundation of what should follow in the contracts and work.

The charter of the city (section 69, subd. IV) provides: "Any street or other railway company occupying with any track any street, avenue or alley or portion thereof which may be ordered paved, repaved, or macadamized may be charged with the expense of such improvement of said portion of such street, avenue or alley so occupied by it between its rails and for one foot beyond the outer rails, and the cost thereof may be collected and enforced against such company, in such manner as may be provided by ordinance, or the mayor and council or board of trustees may by ordinance require such company to pave, repave, or macadamize such portion of such street, avenue or alley occupied by said tracks, and for one foot beyond its outside rails." At the time of the commencement of the proceedings to secure the pavement of the street, the street railway company maintained a line of railway thereon, consisting of a single track, on which it was operating its cars. On the 25th of September, 1909, the mayor and council adopted a resolution waiving "the provision in chapter 14, article I, of the Compiled Statutes of the State of Nebraska 1909, which requires the street railway company, in the event of street paving in cities like Florence, to pave or pay the cost of paving between its rails and to a distance of one foot on the outer sides thereof." It is then resolved that, in consideration of the

construction, without delay, of the double tracks, "the city of Florence agrees to and does hereby waive said statutory requirement in so far only as it provides for the street railway company to pave between its tracks and one foot beyond the outer rails." The street railway company constructed the double track. While the use of the word "may" in the charter might be construed to create an option•on the part of the city as to whether the cost of the paving should be borne by the street railway company or city, it is the opinion of the writer that that question cannot arise here, as the whole of the proceedings, including the ordinance, estimates, publications, bids and contract, show that all persons, including the citizens and taxpayers, were given to understand that the cost of the part of the paving referred to was to be borne by the street railway company, and I am unable to see that the mayor and council had any power or authority, at the late date of the passage of the resolution of waiver, to change the line of conduct formerly publicly adopted. The construction of the double track was in the first instance a matter for the consideration of the street railway company, and for its own benefit. It was its duty to provide accommodation for the public in accordance with its franchise and the use of the street. It owed a duty to the public, growing out of the advantages given by its franchise, and, as long as it fully discharged that duty in all respects, the public had no further demand, and I am totally unable to see how the mayor and council could by passing the resolution exonerate or release the company from paying the cost of the paving, with which it is charged by law, and impose the burden upon the general taxpaying public of the city, but in this view I am not supported by the majority of the court. It is the opinion of my associates that, as the contractor has paved the portion of the street in question in good faith, and with a large outlay of money, depending ,upon the faith and credit of the city, he should not be deprived of his compensation for the work performed, and, since he was not

restrained by injunction, or other process, from constructing the pavement, and his contract required him to push the work, he should not now be required to lose the money expended under his contract at the suit of these plaintiffs, who took no decisive action, before the full completion of the work, that would justify the contractor in delaying to perform his contract with the city.

The judgment of the district court is therefore

AFFIRMED.