ANDREW NELSON ET AL., APPELLEES; ALBERT E. PARMELEE, INTERVENER, APPELLANT, V. CITY OF FLORENCE ET AL., APPELLEES.

FILED DECEMBER 24, 1913.   No. 17,987.

1. Judgment: ADJUDICATION AS PRECEDENT. Where a city of more than 1,000 population and less than 5,000 entered into an agreement with a contractor by which said contractor was to pave a street within the city, and he proceeded with the work until it was completed, and a taxpayer of the city, who had full knowledge of the progress of the work, waited until after its completion and until the city had the use and enjoyment of said street with its improvements, and then sought to enjoin the payment therefor, and the case was determined in the district court against him, and also against him on appeal in the supreme court, in an effort by other plaintiffs in a new case to have the facts re-examined and re-adjudicated, this court will follow the finding and judgment of the supreme court in the former case, not because the judgment in the former case makes the matter under consideration *res judicata,* but because of the rightful force of a just precedent in a legal controversy touching matter of the same kind. *Hadlock v. Tucker,* 93 Neb. 510.

2. Municipal Corporations: STREET IMPROVEMENTS: INJUNCTION: REVIEW. Where a taxpayer, in an action such as that last described, because of the alleged inferiority of material used in the pavement of a street, and because of alleged defects in workmanship, seeks to enjoin the payment for the construction of the improvement, he will be required to bring his action before the contractor has invested his money and finished his work, and if he waits until the work is completed and the city is in the full enjoyment of the improvement, and the equities of the case have been fairly considered by the trial court, the findings and judgment of

such trial court will not be disturbed because of alleged irregularities in the letting of the contract or slight defects in construction; provided, that the work itself is a substantial compliance with the contract.

3. Appeal: EQUITY: TRIAL DE NOVO. The supreme court is not bound by the findings and judgment of the trial court in an equity case, but it is the duty of this court to try the case *de novo*, and to reach an independent conclusion as to the weight, credibility and effect of the evidence, and to render judgment accordingly. *Colby v. Foxworthy*, 80 Neb. 244. And the conclusion of the trial court, derived from the consideration of the evidence of witnesses in the presence of the court, will not be regarded, unless upon the whole record, in view of the position of the trial court in weighing such evidence, they appear to be right. *Grandin v. First Nat. Bank*, 70 Neb. 730. And in cases where the evidence in the district court consists of oral testimony which is in sharp and irreconcilable conflict, and the conclusion derivable therefrom is dependent in part upon inferences from circumstances, some of which are in dispute, and in part upon the weight and credibility of testimony to be determined from the degree of competency of the witnesses, their opportunity for knowledge, and the apparent clearness of their recollection, and the reasons therefor, the findings of the trial judge will be considered in determining the issues in this court. *Cooley v. Rafter*, 80 Neb. 181; *Mensen v. Kelley*, 81 Neb. 206.

APPEAL from the district court for Douglas county: CHARLES LESLIE, JUDGE. *Affirmed.*

*Will H. Thompson*, for appellant.

*Carl E. Herring, John M. Redmond* and *R. H. Olmsted*, contra.

HAMER, J.

This is an appeal from the judgment of the district court for Douglas county. The pleadings on behalf of the plaintiffs and interveners are of great length. We will content ourselves with a statement of the general purposes of the action, a reference to what is denied or admitted, and a review of the facts as they appear from the evidence. The petition and amended petitions on behalf of the plaintiffs and interveners allege that they are taxpayers and

freeholders of the city of Florence; that they prosecute their action on their own behalf and on behalf of all other taxpayers and freeholders of the city of Florence; that the city is a city of the second class governed by the provisions of chapter 37, Ann. St. 1909. It is then alleged that the city entered into a contract with the defendant M. Ford for the improving of Main street in the city of Florence. While it is claimed that the contract was void for certain alleged errors, it is not denied that the street was improved, yet it is claimed that there are certain defects in parts of the workmanship and inferiority in parts of the material used. The interveners allege the ownership of certain real estate in the city of Florence which they claim to own. From time to time amended petitions of intervention were filed and orders were made pending the final determination of the case. They relate to the granting of a temporary injunction and modifications of the same, and leave to file amended pleadings. The answer of Ford is a denial of the material things set forth in the petitions and petitions of intervention. There is also an answer of the defendant, the city of Florence.

The decree, so far as it is necessary to allege its contents, recites that the case came on to be heard upon the second amended petition of intervention, the answer thereto of M. Ford, and of the city of Florence, the replies, the evidence and the arguments of counsel; that the court finds in favor of the said M. Ford and the said city of Florence and against said interveners; that the order of injunction heretofore granted should be dissolved; that the city of Florence and the said M. Ford had full power and authority to make the agreement for settlement described in said pleadings, and that the same should be and is hereby ratified; that under the terms of said agreement the said M. Ford should have and recover from the said city of Florence the sum of $47,392.02, together with interest thereon from May 31, 1910, which said amount is in payment for work done and performed on Main street in said city of Florence from a point 107 feet south of the

57

south line of Jackson street to the south line of Briggs street, save and except the paving between the tracks and one foot adjoining and outside of each track of the Omaha & Council Bluffs Street Railway Company; that special assessments to pay for the same were twice attempted to be levied by the council of said city and were twice set aside, the first time by this court and the last time by said council because of jurisdictional defects; that said levies heretofore attempted to be made are void and no valid levy can be made; and the said M. Ford is entitled to judgment against said city of Florence for the amount so found due him, and that of said sum $7,500, as set forth in said pleadings and statement, is available for the purpose of payment on account of the amount herein found due said Ford; that nothing in this decree shall be construed to modify or lessen the liability of said Ford or his bondsmen under the contract between said Ford and said city, or under the bond given for the completion of the work, and for holding said city of Florence harmless from all damages resulting from negligence in the prosecution of said work; that nothing in this decree shall be construed to prevent the city of Florence from retaining out of any moneys herein found due to said Ford a sum not exceeding $3,500 to protect said city of Florence in the enforcement of the provisions of said contract and bond relative to damages resulting from negligence, or accepting in lieu thereof a good and sufficient bond, and that said city of Florence shall have the right to demand as a condition precedent to the enforcement or satisfaction of the judgment from the bondsmen of said Ford satisfactory assurance of their approval hereof and their continued liability as herein provided; that the said city of Florence shall have the right as a condition precedent to the enforcement of said judgment to demand and receive the delivery to city for cancelation all the warrants issued by said city and delivered to said M. Ford. It is considered, adjudged, and decreed that the orders of injunction heretofore entered are hereby dissolved and set aside; that said M. Ford

and said city of Florence have and recover of and from the interveners and each of them their costs of suit herein expended from the date of intervention; that said Ford recover from said city of Florence the sum of $53,796.48, together with interest thereon from May 6, 1912.   To this judgment the intervener Parmelee excepted.

We have examined the evidence, which covers more than 800 type-written pages.  It shows that there are some defects in the material used and that the workmanship may possibly have been better in part.  It is contended by the appellant that the testimony shows that competitors were induced by purchase to refrain from bidding.  On the trial a witness was produced who testified that he agreed with Mr. Ford not to bid at Florence "and to give him a clear field up there."  He goes into the details, and says that Mr. Madison, the sales agent of the brick company, and himself talked the matter over, that Mr. Ford was with them, and that he said to Ford, that he (the witness) had incurred certain expenses for the promotion of the pavement, and some other expenses.  He then comes to the conclusion that Ford "got a special price on the brick" because he (the witness) stayed out and did not bid; that Charles S. Huntington seems to have been in the employ of this witness.  He was to receive from the witness five cents a yard for "promoting" the pavement.  He seems to have continued working for the pavement until the contract was awarded to Mr. Ford.  In appellant's brief it is said:  "It is an undisputed fact that Huntington was promoting the pavement, and in the first instance for Fanning.  It had been proved and conceded that Fanning did not bid.  It is undisputed that he incurred all this obligation, and no one can be brought to say that after going to all this trouble and expense and having the man on the ground to create a favorable sentiment for the brick block, the very kind that Fanning was laying, he neglected to put in a bid except for the reason detailed by him."  Huntington testified that Jackson told him that he (Huntington) would be "taken care of."  Jackson testi-

fied, and wholly denied this conversation with Hunting-ton. He testified: "I never said anything of the kind." Ford also denied saying what Fanning testified that he said.

From an examination of this conflicting evidence we do not find anything which seems to justify us in the belief that the district judge, who saw the witnesses and heard them testify, was wrong in his conclusion concerning these facts. We are unable to say that the finding and judg-ment of the district court are unsupported by the evidence. It was for the district court to determine the facts in the first instance, and we are unable to say upon the conflict of the evidence before it that its judgment is wrong, and it seems to be right. A verdict on conflicting evidence will not be disturbed where the evidence is sufficient to sustain a recovery in favor of either party. *Schmidt v. Village of Papillion*, 92 Neb. 511; *Kinney v. Chicago, B. & Q. R. Co.*, 92 Neb., 383. In *O'Chander v. Dakota County*, 90 Neb. 3, it was held: "In an action at law, the judgment of the district court, rendered upon conflicting evidence, will not be set aside by a reviewing court, unless it can be said that it is unsupported by the evidence and is clearly wrong."

The principle recognized in the foregoing decisions may be applied to the findings and judgment of the district court in an equity case, except that on appeal, in such case, the hearing in this court is necessarily a trial *de novo*, be-cause of the statute of 1903 prescribing the mode of review-ing findings of fact. Section 681a of the code provides: "That in all appeals from the district court to the supreme court in suits in equity, whether now pending or hereafter to be brought to said court, wherein review of some or all of the findings of fact of the district court is asked by the appellant, it shall be the duty of the supreme court to re-try the issue or issues of fact involved in the finding or find-ings of fact complained of upon the evidence preserved in the bill of exceptions, and upon trial *de novo* of such ques-tion or questions of fact reach an independent conclusion as to what finding or findings are required under the plead-

ings and all the evidence, without reference to the conclusion reached in the district court or the fact that there may be some evidence in support thereof."

In *Grandin v. First Nat. Bank,* 70 Neb. 730, it is is said, in substance, that the conclusion of the trial court derived from the consideration of the evidence of witnesses examined in the presence of the court will not be regarded, unless upon the whole record, in view of the position of the trial court; in weighing such evidence, it appears to be right. And in *Stocker v. Nemaha County,* 72 Neb. 255, it is said that this statute requires the supreme court to go over all the evidence and to reach its own conclusion.

In *Whedon v. Lancaster County,* 80 Neb. 682, it is said, in substance, that the effect of the above act is to require the supreme court to hear *de novo* all appeals from decrees in equity cases and to render such judgment as should have been rendered by the court below.

In *Coad v. Coad,* 87 Neb. 290, it is said that this act requires, in an appeal in equity, the retrial of the case by the supreme court, without reference to the conclusion reached in the lower court.

Notwithstanding the foregoing decisions, the weight of authority would seem to be that, in an equity case appealed to this court, it will be considered that when the evidence in the district court consists of oral testimony which is in sharp irreconcilable conflict, and the conclusion derivable therefrom is dependent in part upon inferences from circumstances, some of which are in dispute, and in part upon the weight and credibility of testimony to be determined upon the degree of competency of the witnesses, their opportunity for knowledge, and the apparent clearness of their recollection, and the reasons therefor, the findings of the trial court will be considered in determining the issues in this court. *Mensen v. Kelley,* 81 Neb. 206; *Cooley v. Rafter,* 80 Neb. 181; *Wetherell v. Adams,* 80 Neb. 584.

In *Coad v. Coad, supra,* it is said, in the body of the opinion: "This being an equity case, this court is required

to retry the cause upon the evidence submitted and preserved in the bill of exceptions and 'reach an independent conclusion as to what finding or findings are required under the pleadings and all the evidence, without reference to the conclusion reached in the district court or the fact that there may be some evidence in support thereof.' Code, sec. 681*a*." In this connection it is further said: "While in cases where the evidence is conflicting we may (and should) consider the findings of the district court (*Wetherell v. Adams*, 80 Neb. 584), yet the burden is, by appeal, placed upon this court to retry the case."

It is proper to remark that this case is not a stranger to this court. The record in the instant case refers to the former case of *Hadlock v. Tucker*, 93 Neb. 510, 520. The pleadings in that case are included in the bill of exceptions in the instant case. It is contended in that case that there were jurisdictional defects, and that the judge's attention was specifically directed to such defects, and that the lower court decided that it found against the plaintiffs, but refused any relief against them. It is contended that the jurisdictional defects taken in that case were well taken, and that they may still be considered. That case was threshed out in this court and a judgment rendered. Whatever was specifically determined in that case cannot be determined in this one. A brief reference to what was before the court in that case is perhaps proper. We will only attempt to recite part of the facts as they are shown by the record and the report of the case. On or about the 2d day of August, 1909, the city council of the city of Florence passed, and the mayor approved, an ordinance ordering the paving, guttering, and subdraining of Main street. That case included the making of the improvements now under consideration in the instant case. It was urged that the ordinance formed but one paving district, which included all the property within the city, and that the improvement district comprised the whole of the city; that no fund had been provided with which to pay the tax for the improvement, and

that there was no money in any fund of the city which could be appropriated to pay the same; that on the day on which the contract was made there had been contracted debts against the city and against the street and alley fund, and for miscellaneous purposes, a sum in excess of $3,400, and that there were contracted against the city, including the light fund, the water fund, and the salary fund, amounting to more than $5,500, and that there were valid outstanding warrants for the current year and previous years amounting to more than $1,800, for the payment of which no appropriation had been made, and that said warrants were drawing interest at the rate of 7 per cent. per annum, and that for the payment of the warrants no provision had been made and no warrants had been provided; that the whole of said city was within the school district of which it formed a part, and that the school district had voted the limit of taxes that could be raised and was unable to levy any tax on its property within the city to pay for the improvement of Main street, and that all the taxes levied by the school district would be needed for the purpose of maintaining the schools therein; that the mayor and council had no authority to impose a tax for paving the street upon any property not abutting on or adjacent to the street improved, and that they were without authority to order Main street to be paved, or to order the creation of an improvement district for the purpose of paving or causing such improvement; that there were certain defects in the proceedings touching the passage of the ordinance and touching its publication, and that because of these defects there had never been jurisdiction to pass the ordinance, and that it had never become a law; that the cost of paving, curbing, guttering and subdraining the intersections on said street would exceed the sum of $10,000, and that no fund had been appropriated to pay the same; that no vote of the people had been taken on the question of paving the street and no petitions therefor had been filed; that there were no definite plans prepared upon which the contractor could

bid with certainty, and upon which the city could award
a contract; that the said M. Ford, mentioned as the con-
tractor in the instant case, was also mentioned as the con-
tractor in that case, and it was sought to restrain him
from proceeding with the improvements attempted to be
made.   Among other things it was urged that the bid of
Ford was not the lowest bid for the improvement; that it
exceeded the estimates of the city engineer; that the bids
were never advertised as required by the terms of the
ordinance; that they were not published in a legal newspa-
per printed in said city; that the said city had no sewer
system, and it was urged that one would soon have to be
provided for it, in which case the sewers would have to
intersect and cross Main street in many places, and in
some parts would have to be constructed along and in the
street; that it was not provided in the ordinance how the
tax should be levied; that it was not provided that there
should be a limit for the beginning or completion of the
work.   It was also alleged that the work had proceeded.

There were amended pleadings and separate answers
filed by the city of Florence and by one Tucker, one Craig,
one Price, and one Allen, and by Ford and Jackson in
their own behalf.   It was alleged in these answers that
the city of Florence was a municipal corporation having
more than 1,000 and less than 5,000 population, and that
it was governed by the provisions of chapter 37, Ann. St.
1909; that the plaintiffs in said case were resident free-
holders of the city; that the improvement district thereby
created included all the real estate within the city; that
pursuant to the ordinance the city advertised for bids for
doing the work, and that bids were received, opened and
considered, and that the contract was awarded to said
Ford for doing the work, and that thereafter he began
and completed said work; that the school district com-
prised all the property in the district; that it was the
owner of the land where the schoolhouse stood; that the
city of Florence was the owner of the real estate within
its limits; that ample provision had been made for con-

nection with any sewer system that might be installed in the city without interference with the pavement on Main street. It was further alleged in that case that during all that time the plaintiffs in that case were present in Florence and knew of the progress of the work, and it was urged that they were estopped to deny or question the validity of the contract.

A joint answer was filed by Ford and Jackson, being the same Ford mentioned in the instant case. It was alleged in the said joint answer that the contractor was proceeding with the work, and that the proceedings from the inception thereof to and including the advertisement for bids and the letting of the contract to said Ford were regular and in accordance with the law and the ordinances. It was also alleged that the plaintiffs in said case had knowledge that the city contemplated the improvement of Main street in the manner provided for, and also had knowledge of the passage of the ordinances of August 2, 1909. The details of all the proceedings in the district court were set up, and the several steps taken toward the completion of the work. It was also alleged that the defendant Ford prosecuted the work to full completion in the month of May, 1910; that the plaintiffs took no action in the prosecution of their suit until January, 1910, when they filed in said case another supplemental petition, the only purpose of which was to prevent the city from issuing its bonds. An estoppel was pleaded in said case in said answer against the plaintiffs by reason of their inaction in asserting objections to the improvements within the proper time. The plaintiffs in said action replied to the answer of defendants by a general denial, and trial was had, and there was a general finding in favor of the plaintiffs and against the defendants upon the allegations touching the issue of bonds, and a perpetual injunction was issued restraining the city of Florence, its officers and agents from issuing the bonds of the city in payment for the improvements referred to, and Jackson and Ford were restrained from receiving any bonds of

the city and for the construction of the improvements referred to, and the costs were taxed to the defendants; but, upon the other issues involved in the case, the finding and decree were in favor of the defendants, and the suit was then dismissed at the plaintiffs' costs, in so far as all such issues were concerned.

There was then an appeal to this court by the plaintiffs. This court held in that case that the decree of the district court upon the question of the right of the city to issue its bonds for the purpose of providing funds with which to pay the contractor for paving the street was in favor of the plaintiffs, and that no appeal had been taken by the defendants, and therefore that that part of the decree in that case must be taken as a final adjudication of the question, and that no further reference need be made to it; but it was then further said by Chief Justice REESE, delivering the opinion of this court: "There seems to be no doubt that the paving of the street has been fully completed by the contractor, and the work approved and accepted by the city officers. While it is true the proceedings of the council in letting the contract were irregular, and, in some respects, censurable, yet we find nothing in the evidence showing that the contractor should be deprived of his compensation for doing the work, if there is any method by which provision may be legally made for his payment. * * * It is the opinion of my associates that, as the contractor has paved the portion of the street in question in good faith, and with a large outlay of money, depending upon the faith and credit of the city, he should not be deprived of his compensation for the work performed, and, since he was not restrained by injunction, or other process, from constructing the pavement, and his contract required him to push the work, he should not now be required to lose the money expended under his contract at the suit of these plaintiffs, who took no decisive action, before the full completion of the work, that would justify the contractor in delaying to perform his contract with the city."

It was also held in that case that, where a bid for the paving of a street exceeded the engineer's estimate to the extent of a few dollars, the extra being limited to one item, and the bid, as made, was accepted by the city council, but upon entering into the contract the excess was discovered and eliminated and the contract brought within the estimate, the contract was not thereby void. It was also held in that case that, where the city entered into an agreement with the contractor by which the contractor was to pave a street within the city, and he proceeded with his work under the contract and under the direction of the city officers until the completion thereof, a taxpayer of the city, having full knowledge of the progress of the work, would not be heard to enjoin the payment thereof, after the completion of the work. Of course, we cannot in this case review the proceedings taken in the former case. We cannot review what was done in *Hadlock v. Tucker, supra.*

We are unable to say that the judgment of the district court is wrong, and it is therefore

AFFIRMED.

FAWCETT, J.

I concur, on the ground upon which the district court based its findings and judgment.