AUGUSTUS N. GAGE *et al.*

*v.*

THE PEOPLE *ex rel.* S. B. Raymond, County Collector.

*Opinion filed December 16, 1902—Rehearing denied February 5, 1903.*

1. PUBLIC IMPROVEMENTS—*city has power to accept local improvement.* An ordinance for a local improvement must prescribe the nature, character, locality and description of the improvement, and the municipal authorities are invested with power to let the contract for the improvement, inspect the work and accept the same when completed.

2. SAME—*when acceptance of work by city is binding.* Acceptance of a local improvement by a city will bind the public and the property owners, although the work was not done with as good materials as the ordinance required or the improvement is less beneficial to the property owner than he had a right to expect.

3. SAME—*city cannot lawfully accept different improvement from that provided for.* Municipal authorities have no right to change the nature, locality, character or description of the improvement as prescribed by the ordinance, nor to accept a different improvement from the one for which the assessment was levied.

4. SAME—*when improvement accepted is not identical with that provided for in the ordinance.* Municipal authorities cannot bind tax-payers by accepting a mixture of clay, gravel, limestone and slag, which will not sustain an ordinary load in wet weather, as compliance with an ordinance which provides for a macadamized road, and tax-payers may avail themselves of the defense on application for judgment of sale of property to satisfy the assessment.

APPEAL from the County Court of Cook county; the Hon. R. H. LOVETT, Judge, presiding.

GAIL E. DEMING, for appellants.

J. L. McKITTRICK, and GEO. GILLETTE, for appellee.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

A statement of the nature of this case and the questions involved will be found in the opinion delivered upon a former appeal in *Gage* v. *People*, 193 Ill. 316, when the

judgment of the county court was reversed and the cause was remanded to that court for a new trial, with directions to admit all such proper testimony as might tend to show that the improvement actually made was not the improvement authorized by the ordinance. This was a question of fact and the single issue remaining in the case. It has been tried as directed in the remanding order, and determined adversely to appellants. Their objections were overruled and judgment was rendered against their lots and lands for the first installment of the special assessment.

The rules of law under which the question is to be determined have been fully stated in our decisions. When a local improvement is provided for, the ordinance must prescribe the nature, character, locality and description of the improvement, and the municipal authorities are invested with power to let the contract for such improvement, to inspect the work and to accept it when completed. If the improvement is the same one provided for by the ordinance, the public will be bound, in this form of proceeding, by the acceptance. Municipal authorities acting for the public and having power to determine whether the contract has been performed in compliance with its terms, will bind the public and the property owner by their decisions, although the work was not, in fact, done with as good materials as the ordinance required or the improvement is less beneficial to the property owner than he had a right to expect. On the other hand, the municipality has no right to change the nature, character, locality and description of the improvement as prescribed by the ordinance. The law does not permit authorities to change the improvement authorized for any other or different one, or to accept a different improvement from the one for which the assessment was levied. In *People* v. *Whidden*, 191 Ill. 374, the ordinance provided for a vitrified brick pavement, and the improvement made and accepted was the identical one provided

for in the ordinance. There were slight deviations, in some places, in the thickness of the pavement or in the foundation bed,—in no place more than an inch,—and some of the materials used were inferior in quality. The curb walls were not plastered as completely as required, and the plaster and concrete were not of the specified grade. The street was graded and paved, and the improvement was the same one provided for by the ordinance, although not as durable or beneficial as required by the ordinance. In *Young* v. *People*, 196 Ill. 603, the ordinance provided for a foundation layer, six inches deep, of the best quality of broken limestone. The city substituted a seven-inch layer of rolling mill slag, and no limestone whatever was used in the foundation. Rolling mill slag is essentially different from the best broken limestone, and we considered that the substitution of it made the improvement a different one from that specified in the ordinance. It was held that the property owners could not be called upon to pay for a pavement of slag under an ordinance providing for a limestone pavement. When this case was here before it was held that it would be a good defense to the application for judgment that the roadway, as finished, was not the macadam which had been provided for by the ordinance, but was, as a matter of fact, no more than a dirt or mud roadway.

By the ordinance providing for the improvement it was ordained that the system of streets therein mentioned should be "graded, curbed, guttered, macadamized and otherwise improved" in accordance with the plans and specifications therein contained, the finished roadway to be twenty-seven feet wide. The provisions relating to grading and paving the roadway were as follows:

"The street shall be graded throughout the entire length eleven and one-half feet on each side of the center to a point thirteen inches below the fixed grade at the center and nineteen inches below the fixed grade eleven and one-half feet distant each side of the center. After

the grading of the roadway has been finished to the grade line, said roadway shall be thoroughly rolled throughout with a steam roller weighing not less than ten tons, and all parts which cannot be so rolled shall be equivalently rammed and tamped. Each depression appearing after said rolling or tamping shall be filled with earth, free from all animal and vegetable matters, and the surface re-rolled or re-tamped, as aforesaid, and repeated until a road-bed perfect in form and grade shall be made. Upon the outer edges of the roadway shall be an excavation two and one-half feet wide and twenty-eight inches below the grade of the center of the finished roadway. The earth in the bottom shall be tamped and eight inches of sand filled thereon, on which shall be constructed a combination curb and gutter six inches in thickness throughout. The curb portion shall be constructed so that the top or surface edge shall conform to and be on the line of the established grade, which line and grade for said top surface of said curb is a line six inches below the grade herein specified for the center of said finished roadway throughout said system, with face thirteen and one-half feet from the center of the street. The portion constituting the curb shall be six inches thick. The gutter-flag shall be twenty-four inches wide in the clear, and so laid that top or surface shall conform to grade of finished roadway. The curb and gutter shall be composed of concrete,—one part Portland cement, five parts granite,—and all exposed surfaces covered with a finishing coat one-half inch thick of mortar, made two parts Portland cement and three parts granite screenings. After curb has been set and upon sub-grade thus prepared, shall be spread layer of furnace slag, which, after being thoroughly rolled with a steam roller weighing not less than ten tons, shall be seven inches in depth at center of roadway, and diminish on each side to five inches at the inner edges of gutter-flags. Upon this layer of furnace slag shall be spread sufficient quantity of limestone

screenings which, after being thoroughly flooded with water and rolled in like manner, as aforesaid, shall fill all the interstices of the aforesaid layer of slag. Upon this layer of furnace slag and limestone screenings shall be spread a course of broken limestone equal to Joliet or Racine limestone, broken to a uniform size of one and one-half inch cube, in sufficient quantity that, after being thoroughly rolled with a steam roller weighing not less than ten tons, will constitute a layer of uniform thickness of three inches throughout. Upon this layer of broken limestone shall be spread sufficient limestone screenings which, after being thoroughly flooded with water and rolled in like manner, as aforesaid, shall fill all the interstices of the aforesaid layer of limestone. Upon this layer of broken limestone and limestone screenings shall be evenly spread a layer of crushed gravel equal to Joliet crushed gravel, in sufficient quantity, after being thoroughly flooded with water and rolled with a steam roller weighing not less than ten tons, to form a layer of uniform thickness of three inches throughout, as and for the finished surface of said roadway. Any depressions occurring during the rolling of the several courses, aforesaid, shall be filled and rolled or equivalently tamped and re-tamped in like manner, as aforesaid, until each of said courses presents a cross-section in accordance with the foregoing specifications. The surface of said roadway, when completed, shall be smooth, hard, solid and unyielding throughout."

It is clear that the ordinance provided for a macadam roadway. It was to be "macadamized," and the testimony of civil engineers examined upon the trial was that the roadway completed according to the ordinance would be a macadam roadway. In the common practice and understanding such a roadway has been regarded as one covered with small, broken stones, so as to form a smooth, hard, convex surface, capable of sustaining ordinarily heavy traffic. It seems that of late rolling mill

slag is used in some cases for the lower course of such a roadway, with the same purpose and effect. There is a difference in the grades of macadam pavement, according to its depth and the quality of materials used; but the evidence on both sides was that this roadway, completed in accordance with the terms of the ordinance, would fulfill that understanding of a macadamized road. The inspectors for the village testified, in a general way, that the improvement was made in accordance with the ordinance, but as to what was actually done, and the condition of the street when the improvement was completed, there was but little controversy. An examination of all the evidence on that subject leaves no doubt of the fact in our minds. After grading the roadway to the grade line a considerable portion of it was not rolled, tamped or otherwise made suitable, in form or grade, for a macadam pavement. Portions of the road-bed were filled with water and mud, in which wagons hauling material sank to the axles, and in these places the slag was dumped in the mud. After the slag was put on the roadway it was not rolled, in some places. Limestone screenings were scattered on it, but not sufficient to fill the interstices. On most of the roadway crushed limestone was put upon the slag, but in some places none was used. The top material was called "bank gravel," and was a mixture of loam, clay and gravel, varying, according to the testimony of the witnesses, from sixty per cent of clay and loam with forty per cent of gravel, to twenty-five per cent of clay and loam and seventy-five per cent of gravel. An analysis of a portion of it showed 57.4 per cent gravel, 42.6 per cent clay and earthy matter. This top dressing, which was to be of gravel, was of such a nature that it could not be rolled when wet, as required by the ordinance, but would ball up and cover the roller with mud and clay. There was no uniformity in the depth of the materials which entered into the construction, and in many places the total depth was two and

one-half to three inches less than required by the ordinance. There is no controversy as to the character of the improvement or the condition of the street after the improvement was completed. It was a mixture of clay, loam, gravel, limestone and slag, which would not sustain an ordinary load in wet weather. Ordinary travel cut it up into deep ruts, and wagons cut down in it so as to bring up the slag from the bottom material. During wet weather the top worked up into slush and loaded teams were mired in the roadway. The question is whether such a roadway is macadamized as provided by the ordinance, and whether the improvement so made and completed is a macadam pavement.

It seems to us a proper conclusion of fact that the street was not macadamized, that the pavement was not macadam, and that the improvement as made and completed was not the same improvement provided by the ordinance. Slight deviations in the depth of the material would not destroy the character of the improvement as a macadam roadway, but here there were great and serious departures from the ordinance. A macadamized roadway does not mean one made up of a mixture of clay, gravel, limestone and slag, that will not sustain an ordinary load in wet weather. Gravel does not mean a mixture of small stone, clay and loam. This is not a case of trifling differences in thickness of the pavement or of merely defective materials or work, where it can be said that the improvement is the same macadamized road provided for. The changes were of such a character, and the road when completed was such, that we do not think it could be called an improvement of the same character and description prescribed by the ordinance.

The judgment of the county court is reversed and the cause remanded.          *Reversed and remanded.*