## STOTT et al. v. SALT LAKE CITY.

No. 2781.    Decided September 16, 1915.    (151 Pac. 988.)

1. MUNICIPAL CORPORATIONS—PUBLIC IMPROVEMENTS—ORDER FOR IMPROVEMENT. Failure of a city council, after having determined to proceed with the construction of a side-walk in accordance with a previous regular notice of intention, to make an order, as required by a municipal ordinance, directing the improvement to be made, not being jurisdictional, but an irregularity merely, does not deprive the council of jurisdiction to assess and levy a tax therefor.[1]    (Page 120.)

2. MUNICIPAL CORPORATIONS—PUBLIC IMPROVEMENTS—ABANDONMENT OF CONTRACT. Where a city council entered into a contract to build a "mortar wearing surface side-walk," but subsequently ordered the contractors to construct a monolithic sidewalk, such departure from the specifications did not constitute an abandonment of the contract; the two kinds of construction differing only in the mixture of materials.    (Page 122.)

3. MUNICIPAL CORPORATIONS—PUBLIC IMPROVEMENTS—ENFORCEMENT OF ASSESSMENTS. Where the construction of a sidewalk has been completed, and the work accepted by the city council, and the abutting owners have failed to effectually protest, they are estopped, in the absence of fraud or mistake, on collateral attack in a proceeding to restrain the assessment and collection of taxes

[1]*Armstrong* v. *Ogden City*, 9 Utah, 255, 34 Pac. 53; Id., 12 Utah, 476, 43 Pac. 119.

to pay for the improvement, to assert that the work was not done in accordance with the contract. (Page 124.)

4. MUNICIPAL CORPORATIONS—PUBLIC IMPROVEMENT—COLLECTION OF TAXES—OBJECTIONS. Where a taxpayer desires to enjoin the collection of a tax levied to pay the cost of a public improvement for which his property is assessed, he, except for fraud or collusion, or jurisdictional defects, must move timely, and if a particular remedy is provided by law he must pursue it. (Page 127.)

5. MUNICIPAL CORPORATIONS—PUBLIC IMPROVEMENTS—COLLECTION OF TAXES—OBJECTIONS. In order that a taxpayer may enjoin the assessment and collection of taxes to pay for a sidewalk already constructed, accepted, and for which warrants have been issued to the contractor, he must show that he should prevail as a matter of justice and good conscience, and it is not enough that the city officials have not strictly complied with nonjurisdictional requirements of the ordinances as to public improvements. (Page 132.)

6. MUNICIPAL CORPORATIONS—PUBLIC IMPROVEMENTS—ENFORCEMENT OF ASSESSMENT—OBJECTIONS. Comp. Laws 1907, section 274, providing that assessments and finding of benefits shall not be subject to review in any legal or equitable action, except for fraud, gross injustice, or mistake, contemplating objections to the justness or legality of the tax, and not being intended to apply where objection is made on the ground of noncompliance with the contract in making the public improvement, does not require taxpayers to protest before the city council sitting as a board of equalization against the levying of a tax to pay for sidewalk construction as a condition precedent to bringing a suit to restrain such collection, where the protest, if made, would have been unavailing. (Page 134.)

7. MUNICIPAL CORPORATIONS—PUBLIC IMPROVEMENTS—ACCEPTANCE BY MUNICIPALITY. A city board of public works may accept a sidewalk built under contract, though it is not literally completed according to the contract, under Comp. Laws 1907, section 286, providing that the board of public works must approve the estimates of the city engineer of the value of the work as the same may progress and to accept any work done or improvement made when the same shall be fully completed according to contract, subject to the approval of the council, as otherwise the board and council would be deprived of all discretion, and acceptance would be a mere formality. (Page 136.)

Appeal from District Court, Third District; *Hon. C. W. Morse*, Judge.

Action by Alexander Stott and others against Salt Lake City to set aside a special tax levy and to enjoin its collection.

Judgment for plaintiffs. Defendant appeals.

REVERSED and remanded, with directions.

*H. J. Dininny, City Attorney, Aaron Myers* and *W. H. Folland, Assistant City Attorneys*, for appellant.

*Dey, Hoppaugh and Fabian*, for respondents.

## APPELLANT'S POINTS.

A defect in proceedings to defeat the lien of a tax must be a jurisdictional defect in the absolute sense, that is one that cannot be dispensed with by the *Legislature*. (*Great N. R'y.* v. *Leavenworth*, 142 Pac. 1155 [Wash.] ; *Chandler* v. *Puyallup*, 127 Pac. 293 [Wash.] ) When jurisdiction has been obtained to make an improvement, subsequent irregularity or error will not be considered to defeat the payment of the tax. (*Koontz* v. *Centerville*, 143 N. W. 480, 491 [Iowa] ; *Clifton L. Co.* v. *Des Moines*, 144 Iowa, 625 ; 123 N. W. 340; *Lightner* v. *Green Co.*, 145 Iowa 103; 123 N. W. 749.) City officers may make changes in work if they do not substantially impair the rights of citizens. This must be so on principle, for having once lawfully acquired jurisdiction these officers may do what is for the best interests of the public provided they do not infringe on the rights of those who pay the assessments. (2 Elliott on Roads and Streets, Sec. 727; *Myers* v. *Wood*, 158 S. W. Rep. 909; *Porter* v. *Boyd*, 214 Mo. 1; 102 S. W. 235; *Board* v. *Silvers*, 22 Ind. 491, 502; *Hellenkamp* v. *Lafayette*, 30 Ind. 192; *Weston* v. *Syracuse*, 53 N. E. 12 [N. Y.] ; *Reclamation Dist.* v. *Goldman*, 65 Cal. 625 ; 4 Pac. 676 ; *Sims* v. *Hines*, 121 Ind. 534; 23 N. E. 515, 517; *Chicago* v. *Hulbert*, 68 N. E. 786.) The existence of benefit to the property owner by reason of the improvement should be the test of substantial performance. If the improvement does substantially the same work as that contracted for and confers substantially the same benefit upon the property owner, it is said that the contract is substantially performed. (Vol. 1, Page & Jones Tax

by Assessment, Sec. 527, p. 831; *Church* v. *People,* 179 Ind. 205; 53 N. E. 554; *Rossiter* v. *City,* 151 Ill. 489; 38 N. E. 599; *Sarber* v. *Rankin,* 154 Ind. 236; 56 N. E. 225; *Risley* v. *St. Louis,* 34 Mo. 404; *St. Joseph* v. *Anthony,* 30 Mo. 537; *Newell* v. *Commonwealth,* 13 N. E. 196.) The performance of a contract strictly is never attained, and when the variation is not of such a character as will make another improvement, and when the engineer to whom both parties have committed the oversight of the work, acting in good faith without fraud or collusion, approves the work on all its steps and progress, no ground is afforded for denying a recovery on the contract. (*Ford* v. *Manchester,* 136 Iowa, 213; 113 N. W. 846; *Wingate* v. *Tipton,* 134 Iowa 97; 108 N. W. 1035; 111 N. W. 432; *In re Apple,* 142 N. W. 1021, 1024 [Iowa.] ) In a suit to set aside an assessment on the ground that the work was not according to the contract, after acceptance of the same by the city, it must appear that the work is of such a character as to be worthless, which would amount to a legal fraud on the property owner. To bind the property owner the work must be of such a character that a reasonable man cannot say honestly that this is a substantial performance of the contract, otherwise its acceptance by the city is in a legal sense a fraud upon the property owner. (*Eiermann* v. *Milwaukee,* 126 N. W. 53; *Gorman* v. *Johnson,* 91 N. E. 97 [Ind.]; *McCan* v. *Des Moines,* 103 N. W. 989; *Myers* v. *Wood, supra.*) A property owner cannot see a contractor go on and make the improvement in front of his property under a contract with the city, making no objections while the work is progressing, and after the work is done and accepted as having been done according to the contract, enjoin the collection of the proper expense of said improvement upon an allegation that the material used and work done were not strictly in accordance with the contract. (2 Elliott on R. & S., Sec. 731, 732; *Evansville* v. *Pfester,* 34 Ind. 36; 7 A. R. 214; *Schumann* v. *Seymour,* 24 N. J. L. 143; *Wilkesbarre* v. *McDermott,* 6 Kulp 345; *Lubstein* v. *Newark,* 24 N. J. L. 200; *Gales* v. *Grand Rapids,* 95 N. W. 998, 999, and cases; *Power* v. *Helena,* 116 Pac. 415; 36 L. R. A. [N. S.] 39, 42; *Muskogee* v. *Rambo,* 138 Pac. 567; *Page* v. *Oneida,* 141 Pac. 238 [Ida.] )

FRICK, J.

This is an action in equity.  It was commenced on May 14, 1913, by the · respondent, Alexander Stott, and thirty-one others, hereinafter called respondents, against Salt Lake City, hereinafter styled appellant, to set aside the levy of a special tax and to perpetually enjoin its collection by appellant.  The tax in question was assessed against the property of respondents to pay the cost of laying a concrete sidewalk in front of their respective premises and in front of the premises of a large number of others who are not parties to this action.  In view that the findings substantially follow the allegations of the complaint, we deem it best to set forth at least the substance of the material portions of the findings.

After finding that the respondents are the owners of certain property affected by the tax in question, the findings proceed:

That on the 31st day of January, 1910, the appellant "caused to be published a notice of intention of said council for the construction of a cement sidewalk, six feet wide and four inches thick on all eight-rod streets and five feet wide and four inches thick on all other streets within the district embraced within sidewalk extension No. 129;  *  *  *  that in and by said notice of intention it was provided that the total cost of said improvement was estimated at $133,252, of which said sum the abutters' portion, to wit, the sum of $115,092.20, was to be raised by local assessment."

It is then found that the notice of intention was published as required by law and that the time for hearing objections and protests was fixed; that at said time there was in force an ordinance in Salt Lake City, which provided:

"At the first regular meeting of the council after the expiration of the twenty days designated in the notice, if written objections to the making of the improvements, signed by the owners of two-thirds of the front feet abutting upon that portion of the street or streets where the improvement is to be made, have not been filed with the recorder, the council shall hear and consider such objections or protests as shall have been made.  If the council determines to proceed with the improvement, it shall make an order, which shall be

entered of record in the minutes of its proceedings, authorizing and directing the work to be done and improvement made.''

It is then found that the city council did not, as provided by said ordinance, direct ''the work to be done and improvement made; and the only action by said council in the premises concerning the making of said improvement was the adoption of said council of a report of a committee, which said report was presented at a meeting thereof on the 3d day of April, A. D. 1911.'' The report is set forth, and it is found that the committee recommended that the said extension in question be approved and that the report of the committee was by the council ''read and adopted.'' The findings then proceed:

That after the adoption of said report, ''on the 9th day of June, A. D. 1911, the board of public works of said defendant city entered into a written contract with McKay and Reed for the construction of said sidewalk in the district included and embraced within said sidewalk extension No. 129, which said contract was thereafter approved on the 19th day of June, A. D. 1911, by the city council of said defendant city, and thereafter on the 20th day of June, A. D. 1911, by the mayor thereof.'' That the sidewalk in question was, by the terms of said contract, to be constructed in accordance with plans and specifications by which it was provided that the same was to be four inches thick and ''constructed in the following manner, to wit: A concrete masonry foundation three (3) inches in thickness, with upper surface finished parallel to one (1) inch below the grade of the finished pavement, with a cement mortar wearing surface thereon to be one (1) inch in thickness—said sidewalks being known as 'mortar wearing surface sidewalks.' '' That thereafter, on the 25th day of July, ''the said board of public works, without readvertising said work to be done or submitting the same to competitive bidding, substantially modified and changed said contract in this: That the said board of public works directed the contractors, McKay & Reed, to disregard that portion of the original contract * *. * providing for. the construction of said sidewalk (that is, in the manner above

set forth) and to substitute in lieu thereof an experimental sidewalk known as a monolithic walk; and in lieu of the provisions of said contract, plants and specifications, to mix the concrete in bulk as one mass and to lay the same in a solid piece." That said contractors, pursuant to the order of said board of public works, then constructed said sidewalk in monolithic form, and that said modification constituted a substantial difference "in reputation, method of construction, and cost of construction—the said monolithic walk requiring less labor in its construction." That the manner of constructing sidewalks with "mortar wearing surface" was well known, while the monolithic walks were in their experimental stage and that the construction of said monolithic sidewalk "constituted a gross violation of the contract." That by reason of the modification aforesaid "there has been no substantial compliance with or performance of said contract." It is also found that respondents "exercised all reasonable and due diligence in protesting against the construction of the sidewalk as so constructed, both by written and oral protest to the city council of said defendant city." That the tax in question was levied and is sought to be collected to defray the expenses of constructing the sidewalks in question and for no other purpose, and that said tax is an apparent lien on the property of respondents, all of which is fully described. That the respondents have paid no part of the tax in question under protest and have not pursued any other remedy, nor did they at any time commence any other legal or equitable proceeding apart from the commencement of this action.

It is further found that the tax was duly assessed after the publication of proper notice and after giving respondents and all others interested opportunity as required by law to object to the inequality or injustice of said tax and that none of the respondents made any objection of any kind to the assessment and levy of said tax; that both the board of public works and the city council of appellant "accepted the sidewalk in question as laid as full and complete compliance with the contract." The acceptance was made in October, 1911, and this action was commenced May 14, 1913. The court also found that the contractors had been fully paid with city

warrants more than a year prior to the commencement of this action. The court also found, as conclusions of law that the "tax levies and each and all of them are wholly invalid, and that Salt Lake City had no jurisdiction or power to make the same," that respondents are neither barred nor estopped from maintaining this action, and that a permanent injunction should issue against appellant as prayed for by respondents. Judgment was accordingly entered, and hence this appeal.

The appellant assails the foregoing findings, conclusions of law, and judgment. Appellant's counsel have argued eight separate propositions in their brief. We shall consider those deemed material in their order.

The first matter to be determined is whether respondents' contention that the city council was without jurisdiction to assess and levy the tax in question is tenable. It is found by the court and nowhere questioned that appellant complied with the statute in duly publishing a proper notice of intention to make the improvement in question. The necessary steps to be taken in order to confer jurisdiction upon city councils were considered and stated in *Armstrong* v. *Ogden City,* 9 Utah, 255, 34 Pac. 53, and again in the same case, in 12 Utah, 476, 43 Pac. 119. The statute was essentially the same when the improvement in question was ordered as it was when the cases referred to were passed on. That is made to appear from a very recent case decided by this court entitled *Jones* v. *Foulger,* 46 Utah 419, 150 Pac. 933. As appears from the foregoing decisions, all the jurisdictional steps were duly taken in this case to confer jurisdiction upon the city council to order the improvement in question. If, therefore, the city council did not possess jurisdiction to levy the tax in question, it was because it failed to comply with some other statutory requirement after it had acquired jurisdiction as before stated.

Respondents' counsel contend that the city council lost jurisdiction, because it failed to make the order directing the improvement to be made as required by the ordinance we have set forth in the findings in the precise form therein provided. Counsel have cited cases wherein it is held that, if

the statute requires a city council to act or speak by or through an ordinance, it cannot legally act or speak in any other way. In other words, it is held that such a requirement is jurisdictional. It is not necessary to refer to all of the cases cited by counsel upon that subject. The case of *Bonesteel* v. *City of New York*, 22 N. Y. 162, and the case of *Warren* v. *Chandos*, 115 Cal. 382, 47 Pac. 132, are typical cases. By an examination of the cases referred to by counsel, it will be found, however, that the ordinances there in question, and which it was held were jurisdictional, were the original ordinances by which the city council ordered the public improvements to be made or the thing there in question to be done. The ordinances in question in those cases, like the notice of intention under our statute, therefore, constituted the jurisdictional step which was required by the statute to be taken before the city council acquired jurisdiction to order the improvement. It will be noticed that the ordinance, which, it is contended, was not followed in this case, did not even prescribe the manner of making the ''order'' which it is contended was omitted, but merely required that the order be evidenced by entering the same in the minutes of the proceeding. Then, again, it was not a statutory requirement, but was one which the council had imposed upon itself. A failure, therefore, to comply with the ordinance, no doubt constituted an irregularity; but such an irregularity could not rob the council of jurisdiction. While it may be that, if a direct proceeding had been timely instituted, a court might perhaps have felt justified in preventing the city council from proceeding to enter into a contract until it had complied with the ordinance, yet upon a collateral attack, like the one here, no court would be authorized, for such an irregularity, to declare all that has been done a mere nullity as we are asked to do. If such can be done now, then the respondents have discovered an easy way to obtain an improvement which is beneficial to their property in the form of a permanent sidewalk, without paying for it or for any part of the cost of construction. In view that the omission complained of was not jurisdictional, respondents cannot now avail themselves of the objection. Mr. Chief Justice Weaver, in speaking

for the Supreme Court of Iowa, disposed of a similar objection
thus:

"To adopt the rule contended for by plaintiff is to sacrifice the
very right involved in such controversies to a matter of form, the
failure to observe which does not appear to have prejudiced plain-
tiff in the slightest degree, and thereby give to him and his prop-
erty the benefit of a valuable street improvement to which he shall
not be required to contribute a dollar." *Koontz* v. *City of Centerville*,
161 Iowa, 630, 143 N. W. 491.

See, also, *Clifton L. Co.* v. *Des Moines*, 144 Iowa, 625, 123
N. W. 340, and *Lightner* v. *Greene County*, 145 Iowa 103, 123
N. W. 749, where the same doctrine is applied.

The rule in that respect is very clearly, as well as tersely,
stated by Mr. Elliott in his excellent work on Roads and
Streets (volume 2, section 731, 3d Ed.), in the following
words:

"In cases where there is jurisdiction, property owners may be
estopped from questioning the validity of the proceedings of the high-
way officers by standing by and permitting the work to be done with-
out interposing any objection. The weight of authority is very decid-
edly in favor of the rule that where there is jurisdiction the property
owner who sees the improvement made and offers no objection until
after the work has been done cannot defeat the assessment upon
the ground that the proceedings have not been regular."

It is, however, also in effect contended that the city council
lost its power or jurisdiction to make the assessment in ques-
tion for the reason that it had "abandoned" the contract
entered into between the appellant and the contractors by
ordering them to construct the monolithic sidewalk, instead
of following the specifications for a "mortar wearing surface
sidewalk." While it is true that there was a departure
from the specifications, yet the departure, in our judg-
ment, did not amount to an abandonment of the con-
tract as contended. What, in truth, is the departure insisted
upon? On this point there is no dispute, and it is agreed
by all that the departure consisted in this: Under the orig-
inal specifications the contractors were required to excavate
or provide a base for a sidewalk four inches in thickness.
They were then required to lay what is called a "concrete
base" three inches in thickness, and upon that base they

were required to lay the "mortar wearing surface" one inch in thickness. Now, the three-inch base was what was called a semi-dry mixture, and was composed of a different proportion of sand, cement, and gravel than was the one-inch surface in that there was no gravel to speak of in the one-inch surface and a larger proportion of sand and cement. Then, again, the one-inch surface was laid on a three-inch base wet and smoothed down with a trowel, leaving a smooth surface. The monolithic walk was, however, composed of precisely the same amount and proportions of sand, cement, and gravel, the only difference being that all the materials were mixed together wet in a machine mixer and were then poured into what may, for want of a better term, be called a mold laid on or into the ground four inches in depth and the full width of the walk and the top, while wet, was smoothed over with a trowel, but still left in a more or less rough condition. The monolithic walk thus constituted one solid block, which was composed of one mixture, while the "mortar wearing surface" walk was composed of a semi-dry mixture three inches in thickness and a surface layer one inch in thickness which was put on the three-inch layer wet and smoothed down, as before stated. The principal difference, therefore, was in the manner of mixing and laying the cement, sand, and gravel composing the walk. The quality, kind, and character of the material was the same in both walks. There was much testimony—indeed, about the whole controversy was limited to the question of the lasting qualities of the monolithic as compared with the mortar wearing surface walk. While the court has found the facts in that regard as we have stated them, and appellant's counsel vigorously assail the findings in that regard as being against the evidence, it, for the reasons hereinafter appearing, is not necessary for us to pass upon the evidence, except to say that in our opinion the evidence is clearly to the effect that the modifications before stated did not amount to an abandonment of the contract, nor to such a departure as deprived the city council of power or jurisdiction to impose the tax in question.

The contention that the tax in question may not be enforced, upon the ground that the sidewalk as actually con-

structed is inferior in quality and not in accordance with the specifications of the one contracted for, we shall now proceed to consider. Appellant's counsel vigorously contend that, in view that the court found that the board of public works had accepted the walk in question as having been in complete and full compliance with the terms of the contract, and which acceptance was duly approved by the city council, in the absence of allegation and proof of fraud or collusion between the contractors on the one hand and the board of public works and the city council upon the other, such acceptance is conclusive upon the property owner in a collateral proceeding like the one in question. Appellant's counsel further contend that, in view that none of the respondents made any objection to the assessment and levy of the tax in question, which was done upon proper notice and after the sidewalk was completed, for that reason they are now estopped from questioning the tax, except upon the ground of "fraud, gross injustice, or mistake," as provided by our statute. Comp. Laws 1907, section 274. In another section of the statute (section 286) it is, among other things, provided:

. "It shall also be the duty of said board [of public works] to approve the estimates of the city engineer which may be made from time to time, of the value of the work as the same may progress; to accept any work done or improvement made, when the same shall be fully completed, according to contract, subject, however, to the approval of the council.",

We have quoted the court's finding upon the question of acceptance, and need not repeat it here. The court, however, also found that the respondents had made certain objections and protests, and for that reason they were not estopped or barred from maintaining this action. What were those objections and protests? Alexander Stott, the leading respondent, made the following objections or protest:

"Mr. Mayor and Gentlemen of the City Council of Salt Lake City, Utah: I, as a taxpayer in Oakley's Addition in Salt Lake City, Utah, do hereby notify your honorable body that I am going to protest against paying for my part of the

sidewalk now being laid in my district, for the following reasons: (1) The contractor has not at any time complied with the specifications of the original contract, in my estimation. (2) I am given to understand your city engineer changed the specifications of the said contract after the said contract was let, which I consider was beyond his power. (3) If it be so that your engineer recommended putting down the sidewalks with concrete in a body without dressing, why did he not see that the proper preparations of material was used to make a good concrete? (4) When your engineer changed the specifications of the contract, why was the contract not readvertised for competition, as I consider, the way the work is being done, that the property owners would have got the sidewalk at a much lower figure. (5) I, as a property owner, would propose, if your honorable body would recommend the board of public works to go out and inspect the work and notify me when you would come, as I am prepared to meet the board, engineer, or contractor, to be shown where the sidewalk would be durable. (6) In my estimation the contractor was delinquent with material and inferior in labor. (7) I for one wanted the sidewalks, and am willing to pay for them, but I do want what the contract calls for. Hoping your honorable body will see proper to comply with the request.''

In order to avoid all question respecting the character and scope of the protest, we have given it in full. In addition to the foregoing, sixty-five others filed a similar protest. Many of the protestants, however, did not join in this action, while quite a large number have joined in the action who filed no protest at all. It will be observed that the protests are all limited to the manner of laying or constructing the sidewalk. They were all made, as appears from the faces of the protests themselves, while the walk was being laid.

The walk in question was between eighteen and twenty miles in length, and the alleged estimated cost was in excess of $100,000, while the actual cost was a little below that figure. The contract price for the walk, and the amount assessed against the property owners, was 76.69 cents per running or linear foot for the five foot walk and 95.38 cents

for the six foot walk. The cost of laying the five foot walk in front of a fifty foot lot would, therefore, be $38.35, while the six foot walk for the same lot would cost $47.69. If the judgment shall prevail, therefore, a taxpayer who owns a fifty foot lot saves $38.35 for a five foot walk and $47.69 for a six foot one, and gets the monolithic walk for nothing, the whole cost of which, as found by the court, was paid by the city to the contractors in city warrants more than a year prior to the commencement of this action. After the filing of the written protest, and perhaps before, on verbal objections, some members of the board of public works, the city engineer, and also some of the members of the city council met with the protestants and discussed and considered the manner of laying the walk. From the record it appears that, while the protestants contended that the sidewalk as laid was not in compliance with the original contract and specifications, the city engineer, board of public works, and some of the members of the city council were equally insistent that the walk as laid was not only in substantial compliance with the terms of the contract, but that it was fully as good a walk as a ''mortar wearing surface'' walk. At all events, neither the board of public works nor the city council heeded the protests, but proceeded with the work, and, when completed, accepted the same as before stated, and thereafter proceeded to levy the tax to provide funds to redeem the outstanding city warrants.

All the answer that respondents' counsel make to the two propositions last advanced by appellant's counsel is that the action of the city engineer, the board of public works, and the city council was arbitrary and unjust, and a departure from the original specifications, and the manner of laying the monolithic sidewalk constituted a fraud for which respondents are entitled to relief. Now, it may be that the action of the city engineer, board of public works, and the city council was somewhat arbitrary; but we fail to find any evidence of either fraud or collusion upon their part. The authorities certainly are to the effect that city councils, or boards of public works, if the power to construct public improvements is vested in them by law, may also, within rea-

sonable limits, depart from the strict terms of the contract in the execution of the work. The proposition is so self-evident, however, that we shall not pause here to cite a large number of authorities or to discuss the limits of such a power. See, as typical cases, *Weston* v. *City of Syracuse*, 158 N. Y. 274, 53 N. E. 12, 43 L. R. A. 678, 70 Am. St. Rep. 472, and *Reclamation District* v. *Goldman*, 65 Cal. 635, 4 Pac. 676.

It must suffice to say that at all events what was done in modifying the contract in question here, as we shall see, is not a matter of which, under the circumstances, respondents may take advantage in this proceeding. The authorities are very numerous, and practically unanimous, to the effect that where a taxpayer desires to enjoin the collection of a tax levied to pay the costs of a public improvement for **4** which his property is assessed he, except for fraud or collusion, or jurisdictional defects, must move timely, and if any particular remedy is provided by law must pursue that remedy. The following cases will be found directly in point: *Koonts* v. *City of Centerville, supra; Clifton L. Co.* v. *Des Moines, supra; Lightner* v. *Green County, supra; Haughawout* v. *Raymon,* 148 Cal. 312, 83 Pac. 53; *Burnham* v. *Abrahamson,* 21 Cal. App. 248, 131 Pac. 344; *Palmer* v. *Stumph,* 29 Ind. 329; *Hellenkamp* v. *City of Lafayette,* 30 Ind. 192; *Darnell* v. *Keller,* 18 Ind. App. 103, 45 N. E. 676; *Haley* v. *City of Alton,* 152 Ill. 113, 38 N. E. 750; *Ricketts* v. *Village of Hyde Park,* 85 Ill. 110; *Bozarth* v. *McGillicuddy,* 19 Ind. App. 26, 47 N. E. 397, 48 N. E. 1042; *Green* v. *Shanklin,* 24 Ind. App. 608, 57 N. E. 269; *Duniway* v. *City of Portland,* 47 Or. 103, 81 Pac. 945; *Baldrick* v. *Gast* (Ky.), 79 S. W. 212; *Diggins* v. *Hartshorne,* 108 Cal. 162, 41 Pac. 283; *Warren* v. *Riddell,* 106 Cal. 352, 39 Pac. 781; *McLaughlin* v. *Knobloch,* 161 Cal. 676, 120 Pac. 27; *Lambert* v. *Bates,* 137 Cal. 676, 70 Pac. 777; *Allen* v. *Woods* (Ky.), 45 S. W. 106; *Purdy* v. *Drake* (Ky.), 32 S. W. 939; *Commissioners* v. *Krauss,* 53 Ohio St. 628, 42 N. E. 831; *Morehouse* v. *City Clerk,* 70 Wash. 152, 126 Pac. 419; *Town of Russell* v. *Whitt,* 161 Ky. 187, 170 S. W. 609; *Dixon* v. *Detroit,* 86 Mich. 516, 49 N. W. 628; *Harper* v. *Grand Rapids,* 105 Mich. 551, 63 N. W. 517; *Rubin* v. *City of Salem,* 58 Or. 91, 112 Pac. 713;

*City of Muskogee* v. *Rambo,* 40 Okl. 672, 138 Pac. 567; *Ellison* v. *City of La Moure* (N. D.), 151 N. W. 988; *Hallock* v. *Tucker,* 93 Neb. 510, 141 N. W. 192; 2 Elliott, Rds. & Sts. (3d Ed.), section 728; Hamilton, Law of Special Assts., sections 454, 455; Gray, Limitations of Taxing Power, etc., section 1879; Cooley on Taxation (2d Ed.), p. 671; 4 McQuillin, Mun. Corps., section 1929.

. We have cited the foregoing cases and authorities for two reasons: (1) To show that the doctrine is generally accepted; and (2) because almost every phase giving rise to objections which are sought to be reached by injunction in cases of assessments for local improvements is discussed and passed on.    While we shall not pause to review all of the cases cited, we shall pause long enough to make a few excerpts from the text-books and one or two cases.    Elliott, in the section referred to above, says:

"By some of the courts it is held that the acceptance of the work by the highway officers is only prima facie evidence that it has been done according to contract, and this is obviously correct in cases where the statute gives the right of appeal, and, either expressly or by fair implication, authorizes the trial of all questions on appeal, or expressly enumerates what shall not be tried, and does not include in the enumeration the question whether the work was or was not performed as the contract requires.    According to the great weight of authority, the rule, under most of the statutes and in the absence of a statute granting the right to contest the question whether the work has been done in conformity to the terms of the contract, is that the acceptance by the highway authorities is conclusive upon the property owners."

The author then proceeds to say that there is some dissent from the great weight of authority; but, as we view the dissenting cases, they merely illustrate extreme cases.    We shall refer to at least some of those cases later.    In *Town of Russell* v. *Whitt, supra,* the rule is stated in the first headnote, thus:

"A lien for a street improvement upon abutting property cannot be questioned on the ground that the improvement did not comply with the contract, where it was accepted by the proper municipal authorities, unless it be shown that they were guilty of fraud or mistake."

In *Ricketts* v. *Village of Hyde Park, supra,* the Supreme Court of Illinois states the rule very tersely in the following words:

"It is also objected that the hydrants used were not such as were required by the ordinance.  * * *  The objection, if tenable, should have been brought forward by bill for injunction before the work was completed."

In Cooley on Taxation (2d Ed.), the author, on page 671, states the rule as follows:

"It is in general no defense to an assessment that the contract for the work has not been performed according to its terms.  If the proper authorities have passed upon the question and accepted the work as satisfactory, the acceptance must be conclusive; there cannot and ought not to be an appeal from them to court or jury.  'No misconstruction or malconstruction of the work, arising from the incapacity, the honest mistake, or the fraud of the contractor, would invalidate the assessment, or relieve the parties assessed from the obligation to pay it.  In this respect the property owners, assessed under the provisions of the law for the cost of a sewer, must stand upon the same footing with parties assessed for taxes for the public benefit.  They take the hazard incident to all public improvements, of their being faulty or useless, through the incapacity or fraud of public servants' " (citing *State* v. *Jersey City,* 29 N. J. Law, 441).

In Gray, Limitations of Taxing Power, the author, in section 1879, says:

"Generally an assessment for local improvements cannot be resisted by the taxpayer on the ground that the work for which the assessment is laid was defectively done.  In the absence of proven fraud on the part of the municipal or other public authorities, the action of those authorities in accepting the work is conclusive upon the taxpayer."

The author then points out some exceptions to the rule, but those do not affect this case.

In *Duniway* v. *City of Portland, supra,* the rule is stated in the headnote, which fairly reflects the decision of the Supreme Court of Oregon, thus:

"In the absence of fraud, the acceptance by the board of public works of a local improvement is conclusive on collateral attack of the improvement assessment, wherein it is sought to question the manner in which the work was done."       .

In 4 McQuillin, Mun. Corps., section 1929, the author says:

Vol. 47—9

"The acceptance by the municipality, or by its proper corporate authorities, of a public improvement after its completion, is, in the absence of fraud, conclusive on the property owners that the work was done according to the contract, and such decision of the proper corporate authorities, made in good faith and in the public interest, is usually regarded as binding, and precludes judicial review. However, it has been held in some decisions that such acceptance, in the absence of proof of fraud, is only prima facie evidence as to completion and the manner in which work was done."

The last quotation we shall make upon this subject is taken from Dillon, Mun. Corps. (5th Ed.), section 1465, where the author, in his usual careful manner, states the rule as follows:

"When the duty is expressly devolved upon the local authorities, or when it rests upon them of necessity and the statute does not otherwise provide, *the acceptance of the improvement* by the appropriate local authorities, acting in good faith and within the scope of their powers after the completion of the work, is conclusive upon the property owner, so far as the character of the work done and the materials used is concerned; and *in the absence of fraud*, or possibly of plain mistake, the property owner cannot defend a suit to enforce the assessment upon the ground that the work was not done according to the contract."

If he may not defend an affirmative action, he may likewise not go into a court of equity and enjoin the collection of the whole tax. Mr. Dillon, however, points out that the city authorities, under the power conferred, "cannot contract for an improvement of one kind, and then accept an entirely different kind, and attempt to levy an assessment therefor." That, counsel for respondent contend, is what was done in this case. In that contention, as we have already pointed out, they are clearly in error. The change complained of related merely to "the character of the work done," as stated by Mr. Dillon, or, to put it in another way, to the method or manner of mixing the material and laying the walk in place. The materials and the proportions in which they were used were precisely the same in both walks; the only difference being that the mixture was made in different proportions in different parts of the walk. This difference, it is very clear, to use Mr. Dillon's expression, was not "an entirely different kind" of walk from that defined in the original specifications,

and, in our judgment, the departure was one from which no fraud or collusion can be implied.

Against the foregoing array of authorities respondents' counsel have referred us to some cases which they contend support the conclusion of the trial court. Cases more par· ticularly relied on are *McCain* v. *City ·of Des Moines,* 128 Iowa 331, 103 N. W. 979; *Gage* v. *People,* 200 Ill. 432, 65 N. E. 1084, and *Eiermann* v. *Milwaukee,* 142 Wis. 606, 126 N. W. 53, 27 L. R. A. (N. S.) 1085. These cases, however, fall within the class, or at least were held to fall within those, referred to by Mr. Dillon, namely, where the substitution of "an entirely different kind" of improvement from that contracted for was provided. In view of the length of this opinion, we can only to a limited extent review any of those cases. None of them, however, goes to the extent of the judgment in the case at bar. In *McCain* v. *City of Des Moines, supra,* the judgment was reversed upon the ground "that the trial court was in error in dismissing the petition" of the plaintiffs. But even in that case the court did not hold that the property owner could, under all circumstances, absolve himself from paying any portion of the tax levied against his property. In concluding the opinion the court says:

"We have no occasion to consider the question as to whether recovery may be had as upon a *quantum meruit,* for that is not in the case as presented by the pleadings."

Then, again, none of the numerous cases herein referred to is cited by the court in that case. All the court there says is:

"Our conclusions find support in the following, among other cases" (citing *Bond* v. *Newark,* 19 N. J .Eq. 376, *Schumm* v. *Seymour,* 24 N. J. Eq. 149, *Lake* v. *Trustees* [N. Y.] 4 Denio, 523, and *Pepper* v. *Philadelphia,* 114 Pa. 96, 6 Atl. 899).

In the case cited from 24 N. J. Eq. 149, it is directly held:

"If the landowners stand by and see the officials pay the contractor, they can have no relief against the assessment."

In every one of the other states from which cases are cited strong decisions will be found which uphold the doc-

trine of the numerous cases we have cited above. Again, in the case cited from Wisconsin, namely, *Eiermann* v. *Milwaukee, supra,* the Supreme Court of that state, in concluding the opinion, says:

"The extent of the relief to which plaintiff may be entitled has not been discussed, and we do not feel called upon to say whether, if plaintiff prevails, he is entitled to have the assessment certificate canceled unconditionally, or should be required as a condition of relief to pay what the walk was reasonably worth."

The Wisconsin decision, therefore, does not support the judgment in the case at bar, although in that case it was expressly found that the contract called for one kind of a sidewalk while another kind was constructed and accepted. The Wisconsin case is, however, not in point for another reason, which we shall not pause to discuss.

All that need be said of the case cited from the Supreme Court of Illinois, namely, *Gage* v. *People, supra,* is that it was correctly decided on the facts. The judgment in the case at bar, however, unconditionally relieves the property owners from paying anything, although there is not a particle of evidence in the record that the walk in question is worthless. While we are not passing upon that phase of the case, yet, upon the whole evidence as it now stands, a finding that the walk in question adds to the value of the property all that is assessed against it would be fully justified. Notwithstanding that, however, every property owner is absolved from paying anything, although the walk so laid, apparently at least, answers every purpose of a permanent sidewalk.

Respondents, however, contend that the court found that their protests and objections were sufficient to entitle them to the relief by injunction. We have set forth those protests in full. It is too plain to require argument that from a legal standpoint the protests had no effect whatever. The city engineer, the board of public works, and some members of the city council discussed and considered those protests with at least some, possibly all, of the protestants. While the protestants contended that the walk in question was not being constructed according to contract, the city officials conceded that the specifications had been de-

parted from in the particulars already stated; but they contended that the walk was just as good, and in some respects better, than one laid according to the original specifications. In proceeding with the work the city officials merely acted in accordance with their apparent convictions. The acts of the officials, therefore, conclusively showed that they would insist upon their view, and, if the protestants desired to insist upon theirs, they should have promptly brought an action to test their contentions and to restrain the further laying of the sidewalk until a court of competent jurisdiction had determined which of the adverse views was the correct one. Had respondents done that, no great injury could have resulted to any one, and a court of equity could then have determined whether the specifications originally adopted should be followed, or whether the departure was merely trivial, rather than substantial. Instead of restraining the work from proceeding, the protestants stood by, however, and not only permitted the improvement to be fully completed, but they did not even make any effort to restrain the city from paying the contractor. After more than a year had elapsed, they then bring this action to enjoin the city from collecting the tax, and thus prevent it from ob‑taining the funds with which to redeem its outstanding warrants issued in payment for the improvement in question.

To permit that to be done under the circumstances is to make a court of equity an instrument of injustice if not a besom of destruction. Here with one stroke of the pen, figuratively speaking, a large number of property owners are relieved from paying approximately $100,000, the cost of a local improvement which, as we have already pointed out, may, and perhaps does, add to the value of their property all that is assessed against the same, and the whole burden in some way must be borne either by the general taxpayers of the city or by the contractor who furnished the labor and material for the improvement. All this is brought about by a court of equity, because certain city officials have not strictly complied with the requirements of a statute or ordinance. The powers of a court of equity are thus successfully invoked to enforce the rigorous rules of law. To prevent in-

justice from the strict enforcement of the inflexible rules of
law is the peculiar province of courts of equity.    Indeed,
those courts were called into existence for that purpose.
As is well said by the Supreme Court of Ohio in a case like
the one at bar, entitled *Commissioners* v. *Krauss*, 53 Ohio
St. 628, 42 N. E. 831:

"A party appealing to a court of equity must make a case that
will recommend itself to the conscience of the court."

That is, it is not enough merely to show that some provi-
sion of a statute or ordinance (where the matter is not juris-
dictional) has not been complied with, but ordinarily it
must further be made to appear that the party complaining
should prevail as a matter of justice and good conscience.
This respondents have utterly failed to do.

Appellant's counsel, however, also insist that respondents
must fail because they did not appear before the city
council sitting as a board of equalization to protest          6
against the levying of the tax in question.    The conten-
tion is based upon our statute (Comp. Laws 1907, section 274),
which, among other things, provides:

"*   *   *   Assessments and finding of benefits shall not
be subject to review in any legal or equitable action except
for fraud, gross injustice, or mistake.    *   *   *"

We are of the opinion, however, that that provision was
not intended to apply to a case where the contention is made
that the contract has not been complied with in furnishing
the material or doing the work.    Take the facts of this case
as an example, and it clearly appears that it would have been
useless for the property owners to have protested the levying
of the tax in question.    No part of the tax was levied until
that portion of the work fronting the property assessed was
completed.    It would have been useless to protest when the
city officials had determined that the work was properly done
and that every lot affected was at least benefited to the extent
of the assessment.    The protest, under such circumstances,
would have had no more legal effect than did the protest to
the laying of the sidewalk.    The city officials apparently were
satisfied that the tax was both legal and just, and therefore

protests were unavailing. It would be just as unfair, therefore, to hold that the property owners were estopped from making the present objection as it would have been to hold that the city was estopped to defend because the taxpayers had protested, but had, nevertheless, stood by and had permitted the improvement to be completed before taking any action.

The objection that is contemplated in the statute quoted from is one that goes to the justness or legality of the tax, regardless of whether the improvement is constructed according to the contract or otherwise. In other words, the objection goes to the imposition of the tax or the amount thereof for a contemplated improvement, although in constructing it every requirement of the contract is complied with. Of course, where jurisdiction to make the improvement or to levy the tax is wholly lacking, the objection may perhaps be made at any time. We are of the opinion, however, that the trend of the modern decisions is to the effect that, in view that the property owner is not a party to the contract, he may not, like a party might, insist upon the rigid enforcement of all of its terms. There are certain things the municipal officers may waive, and they may also accept the improvement, when completed, after having waived the things aforesaid, if they honestly believe the terms of the contract have been substantially complied with, and there is no fraud or collusion between them and the contractor. As to all such acts the property owner is bound, although he might not have been, had he been one of the parties to the contract. The cases further hold that a taxpayer whose property has been benefited by a local improvement should be required to pay at least to the extent that his property has been benefited by the improvement, and this, too, regardless of whether the work has been done in strict accordance with the provisions of the contract or the statute or not. In case he desires to avoid being so bound, he must bring a timely action to restrain the further progress of the work, and have it determined in what respect and to what extent the provisions of the contract or statute have been departed from. Failing to do this, the rights of the property owner should be con-

trolled by equitable as contradistinguished from strict legal rules.

Finally, respondents contend that the board of public works and city council were powerless to accept the sidewalk unless it was in fact "completed according to contract," as provided by section 286, *supra*. This, it seems to us, is begging the question. If a board of public works may        **7** not accept an improvement, and a city council may not approve the acceptance, until every provision of the contract has been strictly and literally complied with, then there is absolutely no discretion vested in those bodies. An acceptance, therefore, becomes a mere formality, and is without legal force or effect until it is determined by some court or jury whether the contract has been complied with or not. Such is not the law, and the authorities are to the contrary. In the absence of fraud or collusion, the judgment of the city officials must prevail. No other rule would be either tolerable or practical. Of course, a departure from the terms of the contract might be so gross that fraud, or collusion, or both, might be implied. But where such is not the case, and where the property owner stands by and permits the improvement to be completed, he should be required to make out a clear case of fraud or collusion before a court of equity is authorized to enjoin the payment of the tax, and even then he ordinarily should be given relief only upon the condition that he do equity as hereinbefore explained. The following, among other, cases discuss and apply the foregoing doctrine; *Creamer* v. *Bates,* 49 Mo. 523; *Pittsburgh* v. *MacConnell,* 130 Pa. 463, 18 Atl. 645; *Anderson* v. *City of Ocala,* 67 Fla. 204, 64 South. 775, 52 L. R. A. (N. S.) 287; *Morris* v. *City of Gainesville,* 60 Fla. 338, 53 South. 739.

Of course, we do not wish to be understood as saying or intimating what the remedy, under our statute, should be, since that question in no possible phase is before us. We however, can see no escape from the conclusion that the respondents have not shown that appellant did not have full and complete jurisdiction to levy tax; that they have not shown any injury whatever to their property upon the one hand, nor that the improvement in question does not benefit

their property to the full extent of the tax upon the other. The judgment, therefore, restraining the collection of the tax complained of, cannot be sustained.

The judgment is therefore reversed, and the cause is remanded to the District Court of Salt Lake County, with directions to enter a judgment dismissing the complaint. Appellant to recover costs.

STRAUP, C. J., and McCARTY, J., concur.