CAMPBELL *v.* CITY OF PLYMOUTH.

1. Municipal Corporations—Village Commission—Jurisdiction.
   "Jurisdiction" of a village commission is the power to act.

2. Same—Lack of Jurisdiction.
   If a village commission had no jurisdiction to enter on paving of street in the first instance, no subsequent action on the part of the commission could aid in any way the construction of the project.

3. Same—Jurisdiction—Irregularities—Waiver—Laches.
   Where a village commission has jurisdiction to enter on paving of street, though subsequent irregularities may have been sufficient to have voided the assessment in case attack was timely made, the right to attack may well be held to have been waived where attack was not made until after the lapse of period of statute of limitations, because of laches.

4. Same—Jurisdiction—Special Assessment—Irregularity.
   Fact that special assessment for paving a village street exceeded charter limits would not raise any question as to the village commission's jurisdiction in the matter although it was such an irregularity as might have been sufficient to void the assessment

had attack been made within period limited by charter or stat-
ute (3 Comp. Laws 1929, § 13976; Plymouth Village Charter,
chap. 9, §§ 1, 9, 25).

5. SAME—SPECIAL ASSESSMENTS—VILLAGE CHARTER—GENERAL STAT-
UTE OF LIMITATIONS.

Landowners may not maintain suit to restrain collection of spe-
cial assessments for paving purposes, commenced over six years
after taxes became a lien on..the land, where they had allowed
the improvement to proceed without objection and had reaped
the benefit of the same even if 60-day limitation in village
charter was unconstitutional because there was no general law
warranting its enactment (3 Comp. Laws 1929, § 13976; Ply-
mouth Village Charter, chap. 9, §§ 1, 9, 25).

6. SAME—VILLAGE COMMISSION—EXCEEDING ESTIMATE OF COST OF
PAVING—JURISDICTION TO LEVY SPECIAL ASSESSMENT.

That village commission exceeded the estimated cost of paving
a street cannot deprive the municipality of jurisdiction to levy
assessments for the payment thereof (Plymouth Village Char-
ter, chap. 9, §§ 1, 9, 25).

7. SAME—LIMITATION OF ACTIONS—IRREGULARITIES IN ASSESSMENTS
FOR SPECIAL IMPROVEMENTS.

Landowners who waited not only 60 days given by village char-
ter within which to institute proceeding to invalidate special
assessment but nearly seven years after taxes became a lien on
their lands were not entitled to maintain suit to enjoin collec-
tion of special assessment which may have been irregular in
that the estimated cost of the improvement was exceeded and
the assessment exceeded the charter limits (3 Comp. Laws 1929,
§ 13976; Plymouth Village Charter, chap. 9, §§ 1, 9, 25).

Appeal from Wayne; Richter (Theodore J.), J.
Submitted January 9, 1940. (Docket No. 108, Cal-
endar No. 40,512.) Decided April 1, 1940. Rehear-
ing denied June 18, 1940.

Bill by William C. Campbell and others against
the city of Plymouth and others to have special as-
sessments declared void, to quiet title, for a refund,
accounting and other relief. Decree for defendants.
Plaintiffs appeal. Affirmed.

*Paul W. Voorheis* and *John L. Crandell* (*R. Gerveys Grylls* and *Goodenough, Voorheis, Long & Ryan,* of counsel), for plaintiffs.

*Arlo A. Emery* (*Harry N. Deyo,* of counsel), for defendants.

Potter, J. The village of Plymouth commenced proceedings for the paving of North Mill street in 1927. June 18, 1928, the village commission received a petition for paving North Mill street, which was accepted and granted. June 26, 1928, it was moved that North Mill street be paved. These minutes were approved July 2, 1928. July 30, 1928, a public hearing on paving of North Mill street was adjourned to August 20, 1928. August 20, 1928, no objections to paving North Mill street being presented, the motion was carried. A board of review met October 20, 1928, and heard objections to the special assessment rolls and approved and filed the same with the village commission for confirmation. October 20, 1928, the report of the village commission was confirmed. Publication of notices for bids was made in the Michigan Investor and the Plymouth Mail, the special assessment roll was confirmed October 20, 1928, and the bonds sold October 22, 1928. The pavement was laid. No objection was made thereto, to the confirmation of the special assessment roll, or otherwise. July 10, 1935, an original bill of complaint was filed, and March 20, 1937, a *second amended* bill of complaint was filed to restrain the collection of the taxes. This was finally brought on for hearing.

The important question to be considered is one of jurisdiction. Jurisdiction of the village commission is the power to act. *Perrine* v. *Farr,* 22 N. J. Law, 356. Did the village commission of the village

of Plymouth have jurisdiction to enter upon the paving of the street in question? If it had no jurisdiction in the first instance, no subsequent action on the part of the village commission could aid in any way the construction of the project. If, on the other hand, the village commission had the power to act, then it had jurisdiction; and, though subsequent irregularities may have been sufficient, had the proceedings been timely attacked for irregularity, to have voided the assessment, still, after the lapse of the period of the statute of limitations * before commencing suit, the parties may well be held to have waived by laches their right to attack the proceedings in question. The trial court found:

"On June 18, 1928, the defendant, city of Plymouth, received a petition for the pavement of Mill street from its intersection at North Main street to its intersection with Starkweather avenue. On July 20 and August 20, 1928, public hearings were held, no objections to the proposed improvement were made, bids were awarded and the village assessor directed to assess the cost of the improvement 'as nearly as may be in proportion to the benefits which each such parcel of land may receive by reason of the construction of such improvement.' On October 20, 1928, the board of review heard objections to the rolls, approved the same and filed the rolls with the village commission for confirmation. On the same day the rolls were confirmed. On October 22, 1928, the village commission by resolution authorized the issuance of bonds totaling $164,000 for the payment of various improvements, including the improvement involved in the case at bar."

The only irregularity complained of is that the special assessment in some cases exceeded the char-

---

* See 3 Comp. Laws 1929, § 13976 (Stat. Ann. § 27.605).—REPORTER.

ter limits of the municipality. The village charter, chap. 9, § 1, provided:

"The aggregate amount of all special assessments which may be levied against any one parcel of land and be at any one time outstanding, and not delinquent, shall not exceed twenty-five per cent. of the value of such parcel of land, as shown by the village assessment roll last confirmed preceding the time of the making of the last of such special assessments."

The fact that the special assessment exceeded the charter limits is not a question of jurisdiction. It is an irregularity in the assessment which might render it void if properly attacked. The assessment in question became a lien upon the land assessed from the date of the confirmation thereof and a charge against the respective owners of the several parcels so assessed. Village charter, chap. 9, § 9. More than six years elapsed after the special assessment was levied and confirmed and after it became a lien upon the land of the special assessment district before it was challenged. Some of the persons subject to assessment paid their taxes prior to the commencement of the suit and some paid during the time suit was pending. Obviously, inasmuch as the special assessment exceeded in some cases the limit fixed by the charter, such irregularity upon the part of the assessing officers could have been timely attacked. The charter, chap. 9, § 25, of the village of Plymouth provided:

"Unless within sixty days from the date of which any special assessment is confirmed by the commission, notice is given in writing to the commission of the intention of contesting or enjoining the collection of any such special assessment for the construction of any pavement, * * * which notice shall state

the grounds on which the proceedings are to be contested, no suit or action of any kind shall be instituted or maintained for the purpose of contesting or enjoining the collection of such special assessment.''

Conceding for the purposes of this case that this provision of the charter of the village of Plymouth was unconstitutional because there was no general law warranting its enactment, and that this suit is governed by the statute of limitations fixed by the general law, still suit was not commenced within the statutory period of six years after the taxes became a lien upon the land. Had suit been timely commenced, it is conceded there were irregularities which might have proved fatal to the assessment, especially on the part of those who were assessed beyond the charter limits. But plaintiffs did not act. More than six years elapsed after the taxes became a lien upon the land. During this time the work was allowed to progress without objection on the part of all the complaining parties. Plaintiffs knew of the provisions of the law, knew their lands were so situated with reference to the improvement that any assessment, whether on the basis of benefits or frontage upon the street, would include such lands, and yet they allowed the improvement to proceed and reaped the benefit of the same. Under such circumstances, they may not maintain a suit in equity. *Lundbom* v. *City of Manistee,* 93 Mich. 170.

In *Lowrie & Robinson Lumber Co.* v. *City of Detroit,* 237 Mich. 138, it was claimed the amount of the special assessment was irregular. Plaintiff claimed it was assessed too much. This court said:

''After the roll was completed, notice as required by the charter was given, and, although it had 12 days thereafter to make objection, plaintiff made no

effort to have the amount reduced. The roll was reported to the common council, and no protest was there made. It was not until the improvement was paid for, a portion thereof being paid to plaintiff, and a statement was sent to plaintiff for the amount assessed against its lands, and some months had elapsed thereafter, that this bill was filed. Having remained silent during the time the assessment was open to review by the constituted tribunals under the charter, having stood by until the improvement had been paid for, and itself having received its share of the compensation awarded on the condemnation proceedings, it may not now be heard in a court of equity to say that its assessment is excessive and for that reason unenforceable. *Brown* v. *City of Grand Rapids,* 83 Mich. 101; *Lundbom* v. *City of Manistee,* 93 Mich. 170; *Goodwillie* v. *City of Detroit,* 103 Mich. 283; *Atwell* v. *Barnes,* 109 Mich. 10; *Gates* v. *City of Grand Rapids,* 134 Mich. 96; *Shaw* v. *City of Ypsilanti,* 146 Mich. 712; *W. F. Stewart Co.* v. *City of Flint,* 147 Mich. 697; *Attwood Brass Works* v. *City of Grand Rapids,* 230 Mich. 271."

The fact the village commission exceeded the estimated cost of the improvement cannot deprive the municipality of jurisdiction. *Stott* v. *Salt Lake City,* 47 Utah, 113 (151 Pac. 988); *Branting* v. *Salt Lake City,* 47 Utah, 296 (153 Pac. 995). If there was jurisdiction to act in the first place and the illegality of the assessment was due to an illegal exercise of jurisdiction or power by reason of levying an assessment in excess of the amount authorized by charter, the weight of authority is that this constitutes a mere irregularity and that estoppel may be claimed. *Bower* v. *City of Bainbridge,* 168 Ga. 616 (148 S. E. 517); 4 Dillon, Municipal Corporations (5th Ed.), § 1455. In *Kellems* v. *Republic Construction Co.,* 77

Ind. App. 18 (131 N. E. 545), where a contract for the improvement exceeded the statutory limit, it was held that the property owner desiring to take advantage of an irregularity or defect in the levying of an assessment must do so within the time fixed by statute, and that he could not remain silent and watch the improvement being made and avoid the payment of benefits received. In *Hillside Land Co.* v. *Township of North Bergen,* 112 N. J. Law, 576 (172 Atl. 585), it was held that though the special assessment was irregular and might have been attacked, still, where the provisions of the charter were complied with so far as notice of special assessment of the district to be assessed, of the meetings to be held to consider objections thereto, of publication, and of review of special assessments was given and the parties neglected to act, the parties were guilty of laches in waiting until the expiration of the period of the statute of limitations before instituting suit. In *Jordan* v. *City of Cleveland,* 148 Tenn. 337 (255 S. W. 377), complainants, residents and property owners whose properties abutted an avenue which the city was about to pave, filed a bill to enjoin the paving of the street upon the ground the assessment for paving upon the lots exceeded 25 per cent. of the value exclusive of improvements. Relief was denied, under a statute substantially similar to the provisions of the charter in question, upon the ground the parties had an appeal from the assessment and were not entitled to have the progress of the improvement stopped by injunction.

There is no question but that had the persons assessed acted promptly if there was any irregularity in the assessment, they might have had relief. But having waited, not only the 60 days provided for by the charter, but nearly seven years, before institut-

ing any proceeding, the irregularity in the assessment cannot now be urged .in a court of equity by reason of the inexcusable delay of plaintiffs. They are barred by laches from so doing.

Judgment affirmed, with costs.

BUSHNELL, C. J., and SHARPE, CHANDLER, NORTH, McALLISTER, WIEST, and BUTZEL, JJ., concurred.